1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  ELIZABETH S. KIM, State Bar No. 166599
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA 94102-7004
7   Telephone: (415) 703-5715
    Fax: (415) 703-5843
8   Email: Elizabeth.Kim@doj.ca.gov

9  Attorneys for Respondent, Robert Ayers, Warden

10

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  **CHRISTOPHER BOATMAN,** | C 07-3412 SI |
| 15                                      Petitioner, | **ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| 16          v. | |
| 17  **ROBERT AYERS, Warden,** | Judge:    The Honorable Susan Illston |
| 18                                      Respondent. | |

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

ANSWER .......................................................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES .................... 7

ARGUMENT ................................................................................... 7

I. THE HABEAS PETITION MUST BE DENIED BECAUSE THE STATE COURT DECISION WAS NOT CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS. ......... 7

   A. Standard of Review and Deference to State Court Decision. ...... 7

   B. The State Court's Adjudication of Petitioner's Federal Claims Should Be Affirmed Under § 2254(d) Because the State Court Decision Did Not Contradict, Unreasonably Apply, or Unreasonably Determine the Facts Under the Only Clearly Established Federal Law Addressing Protections Due to Inmates in the Parole Process. ...... 8

   C. Even if the Some-Evidence Standard Applies, Petitioner's Habeas Petition Must Be Denied Because There Is Some Evidence to Support the Parole Denial as Found by the State Court. ...... 10

II. THERE IS NO EVIDENCE THAT BOARD DENIED PETITIONER PAROLE UNDER PRESSURE FROM THE GOVERNOR. ...... 12

III. THE BOARD'S DECISION DID NOT VIOLATE THE TERMS OF PETITIONER'S PLEA AGREEMENT. ...... 13

CONCLUSION ................................................................................ 14

1

**TABLE OF AUTHORITIES**

2
                                                                 Page

3 | Cases

4 | *Baja v. Ducharme*
    187 F.3d 1075 (9th Cir. 1999)                                    6
5
    *Carey v. Musladin*
6 | __U.S.__, 127 S. Ct. 649 (2006)                                  9

7 | *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*
    442 U.S. 1 (1979)                                          6, 8-10, 13
8
    *In re Dannenberg*
9 | 34 Cal.4th 1061 (2005)                                           4

10 | *Lockyer v. Andrade*
     538 U.S. 63 (2003)                                            7, 12
11
     *McQuillion v. Duncan*
12 | 306 F.3d 895 (9th Cir. 2002)                                    9

13 | *Miller-El v. Cockrell*
     537 U.S. 322 (2003)                                            11
14
     *Milton v. Wainwright*
15 | 407 U.S. 371 (1972)                                             7

16 | *Price v. Vincent*
     538 U.S. 634 (2003)                                            7
17
     *Sandin v. Conner*
18 | 515 U.S. 472 (1995)                                            6

19 | *Santobello v. New* York
     404 U.S. 257 (1971)                                          13, 14
20
     *Sass v. California Board of Prison Terms*
21 | 461 F.3d 1123 (9th Cir. 2006)                                  6, 9

22 | *Superintendent v. Hill*
     472 U.S. 445 (1985)                                            9-12
23
     *United States v. De la Fuente*
24 | 8 F.3d 1333 (9th Cir. 1993)                                    13

25 | *Walker v. Johnston*
     312 U.S. 275 (1941)                                            14
26
     *Wilkinson v. Austin*
27 | 545 U.S. 2384 (2005)                                           9

28

Answer; Mem. of P.&A.                                    *Boatman v. Ayers*
                                                          C 07-3412 SI

**TABLE OF AUTHORITIES  (continued)**

Page

*Williams v. Taylor*
529 U.S. 362 (2000)                                                                11

*Wolff v. McDonnell*
418 U.S. 539 (1974)                                                                 9

*Woodford v. Viscotti*
537 U.S. 19 (2002)                                                                  7

*Wright v. Van Patten*
__S.Ct.__, 2008 WL 59980 *3-4 (Jan. 7, 2008)                                        9

*Ylst v. Nunnemaker*
501 U.S. 797 (1991)                                                                 7

**Statutes**

28 United States Code
        § 2254                                                                      5
        § 2254(d)                                                             7, 10, 12
        § 2254(d)(1)                                                               7

**Other Authorities**

Antiterrorism and Effective Death Penalty Act (AEDPA)                        6, 8, 12

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  ELIZABETH S. KIM, State Bar No. 166599
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5715
     Fax:  (415) 703-5843
8    Email:  Elizabeth.Kim@doj.ca.gov

9  Attorneys for Respondent, Robert Ayers, Warden

10

11                 IN THE UNITED STATES DISTRICT COURT

12            FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  **CHRISTOPHER BOATMAN,** | C 07-3412 SI |
| 15                                    Petitioner, | **ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| 16         **v.** | |
| 17  **ROBERT AYERS, Warden,** | Judge:        The Honorable |
| 18                                    Respondent. | Susan Illston |

19

20         In response to the Court's November 14, 2007 Order to Show Cause (OSC), Respondent

21  Robert Ayers, Warden of San Quentin State Prison, submits this Answer and the supporting

22  Memorandum of Points and Authorities in response to the Petition for Writ of Habeas Corpus

23  filed by Christopher Boatman.

24         The Court dismissed without leave to amend Petitioner's claim alleging violations of res

25  judicata and collateral estoppel principles because it did not involve a violation of the

26  Constitution, laws, or treaties of the United States.  (OSC at 2.)  The Court also dismissed

27  Petitioner's equal protection claims as to the Board of Parole Hearings' alleged violation of his

28  plea agreement.  (*Id.*)  This Answer, therefore, addresses the remaining due process claims.

Answer; Mem. of P.&A.

*Boatman v. Ayers*
C 07-3412 SI

1

**ANSWER**

1.    Petitioner Christopher Boatman has been in the lawful custody of the California Department of Corrections and Rehabilitation since his conviction for second-degree murder pursuant to a guilty plea. (Ex. 1 - J. of Commitment.)  Petitioner is serving a fifteen-year-to-life sentence, plus a one-year enhancement for possession of a firearm (a handgun) during the commission of the offense. (*Id.*)

2.    In the current proceeding, Petitioner is not challenging the validity of his conviction or sentence, but rather the Board of Parole Hearings June 2006 decision denying him parole.

3.    On June 29, 2006 Petitioner appeared before the Board for a subsequent parole consideration hearing. (Ex. 2 - June 2006 Hr'g Tr.)  At the conclusion of the hearing, and after deliberation, the Board concluded that Petitioner was not yet suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison. (*Id.* at 64.)  The Board's decision was based on the circumstances of Petitioner's commitment offense and the escalating pattern of his criminality. (*Id.* at 64-65.)  In its decision, and during the hearing, the Board commended Petitioner for his achievements in prison.  In a separate decision, the Board explained its basis for a two-year denial of parole consideration. (*Id.*)

4.    At the hearing, the Board considered the circumstances of Petitioner's commitment offense as set forth in the June 2006 report to the Board, and as testified to by Petitioner at the hearing:

On May 29, 1986, Petitioner and two of his friends, Harold Jones and Roland Montgomery, robbed a store, and then shot and killed the nineteen year old store clerk.  (Ex. 3 - June 2006 Life Prisoner Eval. Report at 1-2; *see also* Ex. 4 - Probation Officer's Report at 3-4.)  During the robbery, Petitioner was standing by the entrance to the store, acting as the look-out, while Montgomery sat in the car ready for the get-away. (*Id.*)  Jones demanded money from the store clerk and shot the clerk in the back of the neck after the clerk handed over the money without resisting. (*Id.*)  The victim, John Sousa, was later discovered by another customer lying on the floor with blood streaming out of his mouth. (*Id.*)  Mr. Sousa was transported to Valley Medical Center, but later died. (*Id.*)

Answer; Mem. of P.&A.

*Boatman v. Ayers*
C 07-3412 SI

1   A few hours before the robbery, Petitioner and his two crime partners were free-basing

2   cocaine, and after it ran out, decided to rob a store because they needed more money to buy more

3   cocaine. (Ex. 3 at 1-2; Ex. 4 at 3-4.) Petitioner took his stepmother's gun from her dresser, and

4   drove himself and his crime partners around town looking for the right store to rob. (*Id.*)

5   Petitioner took his stepmother's gun because Jones's sawed-off shotgun was too big, and a

6   handgun would be easier to hide. (*Id.*) While planning the robbery, Jones fired one shot at an

7   empty can with Petitioner's handgun, and stated that they were not going to worry about getting

8   caught although they were not going to use masks to hide their identities to commit the robbery.

9   (*Id.*) Petitioner and his partners drove by at least three stores before selecting 41 Market to rob.

10  (*Id.*) The other stores were rejected because there were too many people around. (*Id.*)

11  After the robbery, Petitioner dropped off his friends, returned to his home, and deflated a

12  tire to make it appear that his car was disabled. (Ex. 2 at ; Ex. 3 at 1-2; Ex. 4 at 3-4.) He also

13  wiped off fingerprints from the gun before putting it back. (Ex. 2 at 10.) He then walked back to

14  Jones's and Montgomery's house where he found out that there were no drugs available to buy.

15  (Ex. 3 at 1-2; Ex. 4 at 3-4.)

16  An anonymous caller identified Petitioner and his friends as the perpetrators of the robbery

17  and murder. Subsequently, a search of Petitioner's house revealed the murder weapon, and

18  Petitioner was arrested. (Ex. 3 at 1-2; Ex. 4 at 3-4.)

19  5.   At the June 2006 hearing, Petitioner testified that he played a leadership role in the

20  planning and the execution of the robbery that also turned into murder. (Ex. 2 at 9-10, 53.) His

21  leadership position started from the moment he picked up the gun and decided that he was going

22  to go and be a part of the robbery. (*Id.* at 54.)

23  6.   Respondent alleges that Petitioner was an active participant in the careful planning and

24  the execution of the robbery/murder. He provided a loaded gun that was used in the robbery and

25  the murder, he provided the car that was used to drive around town to select the right store to rob

26  and for use as a quick get-way, he acted as the look-out at the store for any outside interference,

27  and he drove the get-away car from the scene. (Ex. 2 at 8-10, 53-54; Ex. 3 at 1-2; Ex. 4 at 3-4.)

28  7.   In addition to the commitment offense, the Board discussed with Petitioner his past

Answer; Mem. of P.&A.                                                    *Boatman v. Ayers*
                                                                        C 07-3412 SI

1 criminal history; his social history, including his family life, educational and employment

2 background, and his substance use history (marijuana, alcohol, crack cocaine); his post-

3 conviction factors such as his vocational certificates, his prison jobs, his disciplinary history, and

4 participation in self-help programs; the psychologist's evaluation; his parole plans; and his

5 support letters. (Ex. 2 at 12-43.) Thus, the Board gave petitioner individualized consideration of

6 all relevant suitability and unsuitability factors at the June 2006 hearing.

7     8.   Petitioner's adult criminal record includes an arrest for grand theft and possession of a

8 weapon. (Ex. 2 at 13-14; Ex. 4 at 5-6.) Petitioner was convicted and received a six-month jail

9 term and three years probation. (*Id.*) Petitioner was also arrested for two counts of rape of a

10 fourteen year old minor, which was dismissed for the victim's refusal to cooperate with the

11 authorities. (Ex. 2 at 13; Ex. 5 - Disposition of Arrest & Ct. Action; Ex. 6 - Crime Report.)

12 Petitioner was also arrested for petty theft and received one year probation and community

13 service. (Ex. 2 at 13-14.) At the time of the 1986 robbery and murder, Petitioner was on

14 probation. (Ex. 2; Ex. 4.)

15     9.   Petitioner received two minor disciplinary memoranda, or "counseling chronos" while

16 incarcerated: in 1993 for possession of contraband (earrings), and in 1999 for failing to stand for

17 count. (Ex. 7 - Counseling Chronos.)

18     10.  At the June 2006 hearing, the Board also considered the psychological evaluation

19 report prepared in January 2005. (Ex. 2 at 25-26; Ex. 8 - Mental Health Eval.) The Board noted

20 that the psychologist opined that Petitioner would pose a low risk if released into the community

21 at this time. (*Id.*)

22     11.  The District Attorney's Office opposed parole for Petitioner at the June 2006 hearing.

23 (Ex. 2 at 59-60.) Under California law, the Board must consider the District Attorney's

24 statements in opposition to parole. Cal. Penal Code, § 3046(c); *In re Dannenberg*, 34 Cal.4th

25 1061, 1084 (2005).

26     12.  After being denied parole, Petitioner filed a habeas corpus petition in the Fresno

27 County Superior Court challenging the Board's 2006 decision. The court denied his petition in a

28 reasoned decision. (Ex. 9.) The superior court found that there was some evidence to support

Answer; Mem. of P.&A.

*Boatman v. Ayers*
C 07-3412 SI

1  the Board's decision based on the circumstances of the commitment offense and the escalating

2  pattern of Petitioner's past criminality. (*Id.*)

3      13.  Petitioner also challenged the Board's decision in the California Court of Appeal and

4  the California Supreme Court, and his petitions there were summarily denied. (Ex. 10 - Ct. of

5  Appeal Order; Ex. 11- Cal. Sup. Ct. Order.)

6      14.  Respondent admits that Petitioner exhausted his state remedies regarding the Board's

7  2006 decision.  Respondent denies, however, that he has exhausted his claims to the extent they

8  are more broadly interpreted to encompass any systemic issues beyond this parole review.

9      15.  Respondent admits that Petitioner's habeas petition is timely and that his petition is not

10  otherwise procedurally barred.

11      16.  Respondent denies that the Board's decision violated the term of Petitioner's plea

12  agreement.  Petitioner continues to have the possibility of parole, and Petitioner's plea agreement

13  contains no promise by the People that the parole authority would not consider the entire

14  circumstances of his commitment offense when evaluating his suitability for parole or that the

15  District Attorney's Office would not oppose his parole. (Ex. 12 - Change of Plea Tr.; Ex. 13 -

16  Sentencing/Judgment Tr.) Also, there was no agreement about when or under what

17  circumstances Petitioner would be released from prison. (*Id.*)

18      17.  Respondent denies that the Board denied Petitioner parole under pressure from

19  Governor Schwarzenegger to do so.  Respondent affirmatively alleges that the Board gave

20  Petitioner individualized consideration of the circumstances tending to show his suitability and

21  unsuitability for parole before it found him unsuitable for parole in June 2006.

22      18.  Respondent affirmatively alleges that Petitioner was provided a fair and impartial

23  Board panel, and Petitioner indicated he had no objection to the panel at the June 2006 hearing.

24  (Ex. 2 at 6.)

25      19.  Respondent denies and reserves the argument that Petitioner is entitled to federal

26  habeas relief under 28 U.S.C. § 2254 because California inmates do not have a federally

27  protected liberty interest in parole release and the state court decisions are not contrary to clearly

28  established federal law as determined by the United States Supreme Court.  Although the Ninth

Answer; Mem. of P.&A.

*Boatman v. Ayers*
C 07-3412 SI

1  Circuit has held that California inmates do have a liberty interest in parole, *Sass v. California*

2  *Board of Prison Terms*, 461 F.3d 1123 (9th Cir. 2006), this circuit court decision is not clearly

3  established federal law for purposes of the Antiterrorism and Effective Death Penalty Act

4  (AEDPA).  The Supreme Court has set forth two methodologies for determining whether a state

5  creates a federally protected liberty interest and California inmates do not have a liberty interest

6  in parole under either methodology.  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442

7  U.S. 1 (1979); *Sandin v. Conner*, 515 U.S. 472 (1995).

8       20.  Even if Petitioner has a federal liberty interest in parole release, he received all the due

9  process to which he is entitled under clearly established federal law because he received an

10  opportunity to be heard by the Board and a statement of reasons for the Board's decision.

11  *Greenholtz*, 442 U.S. at 16.  And even if he was entitled to more process than provided for under

12  *Greenholtz* such that the Board's decision must be supported by some evidence in the record, the

13  state court properly found that the Board's decision to deny Petitioner's parole was supported by

14  some evidence in the record and the state court decision is entitle to deference under AEDPA.

15       21.  Respondent denies that Petitioner's federal due process rights were violated in

16  connection with the Board's 2006 decision.  Respondent also affirmatively alleges that there is

17  no clearly established federal law prohibiting the Board from relying on the unchanging

18  circumstances of Petitioner's commitment offense or his prior criminal record when considering

19  his suitability for parole.

20       22.  Respondent submits that an evidentiary hearing is not necessary because the claims can

21  be resolved on the existing state court record.  *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir.

22  1999).

23       23.  Petitioner fails to state or establish any grounds for habeas corpus relief.

24       For the reasons stated in this Answer and in the following Memorandum of Points and

25  Authorities, Respondent requests that the Court deny the petition.

26  \\\

27  \\\

28  \\\

Answer; Mem. of P.&A.

*Boatman v. Ayers*
C 07-3412 SI

## MEMORANDUM OF POINTS AND AUTHORITIES

## ARGUMENT

### I.

**THE HABEAS PETITION MUST BE DENIED BECAUSE THE STATE COURT DECISION WAS NOT CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS.**

**A.    Standard of Review and Deference to State Court Decision.**

The purpose of federal habeas corpus review is to supervise the quality of state courts' adjudications of federal constitutional claims. *Milton v. Wainwright*, 407 U.S. 371, 377 (1972). Thus, a habeas petitioner whose claim was adjudicated on the merits in state courts is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d):  (1) the adjudication of the claim by the state court resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court law; or (2) the adjudication of the claim by the state court resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); *Price v. Vincent*, 538 U.S. 634, 638-39 (2003).

As explained by the Supreme Court, § 2254(d)(1) "circumscribes a federal habeas court's review of a state court decision." *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003).  The "highly deferential standard for evaluating state court rulings" embodied in § 2254(d) "demands that state court decisions be given the benefit of the doubt." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002). Thus, it is error for a federal court to review *de novo* a claim that was adjudicated on the merits in state court. *See Price,* 538 U.S. at 638-43.

Here, the state courts adjudicated Petitioner's federal constitutional claims on the merits when they upheld the Board's decision denying parole to Petitioner.  (Ex. 9-11.)  The Fresno County Superior Court's decision, the last reasoned decision and thus the decision to which § 2254(d) applies, *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 805-06 (1991), found some evidence to support the Board's decision.  (Ex. 9.)  The state court found that there was some evidence to support the Board's findings that the violent nature of petitioner's commitment offense, and the

1    escalating pattern of his criminality before the murder make Petitioner an unreasonable risk to

2    society or a threat to public safety at this time. (*Id.* at 3.)

3        The state court found that Petitioner participated in an armed robbery that resulted in the

4    execution-style murder of a nineteen year old store clerk; that he provided the loaded gun used

5    the kill the victim; that he participated in the crime even after hearing his associate's statement

6    that there would be no need to worry about witnesses; that he assumed a leadership role in the

7    crime; and that he volunteered to stand look-out rather than just drive to the store. (*Id.*) Based

8    on these circumstances, although Petitioner claims that he thought no one would get hurt, the

9    state court determined that the Board was entitled to believe that Petitioner knew innocent people

10   might be hurt during the robbery, and thus, that Petitioner had not sufficiently accepted

11   responsibility for his part in the victim's murder. (*Id.* at 3-4.)

12       The state court also found there was some evidence to support the Board's finding that

13   Petitioner had an escalating pattern of criminality because he had sex with a fourteen-year-old

14   when he was eighteen, he spent six months in jail after being convicted of grand theft (purse

15   snatching), he stole tapes from a music store, and he was on probation at the time of the murder.

16   (Ex. 9 at 4.) Based on these circumstances, the state court found that the Board "had at least

17   some evidence to believe that the murder was not an isolated incident, but rather part of an

18   escalating pattern of criminal conduct." (*Id.*)

19       The state court's adjudication of Petitioner's federal claims on the merits is entitled to

20   deference under AEDPA.

21   **B.    The State Court's Adjudication of Petitioner's Federal Claims Should Be
        Affirmed Under § 2254(d) Because the State Court Decision Did Not**

22   **Contradict, Unreasonably Apply, or Unreasonably Determine the Facts
        Under the Only Clearly Established Federal Law Addressing Protections**

23   **Due to Inmates in the Parole Process.**

24       The only clearly established federal law concerning the due process protections required at a

25   parole proceeding held that due process is satisfied if the inmate is given an opportunity to be

26   heard and he receives a decision informing him of the reasons he did not qualify for parole.

27   *Greenholtz*, 442 U.S. at 16. Thus, as a matter of "clearly established" federal law, a challenge to

28

Answer; Mem. of P.&A.

*Boatman v. Ayers*
C 07-3412 SI

1   a parole decision will fail if the inmate has received the protections required under *Greenholtz*.[1]

2       The Ninth Circuit, however, has held that some evidence must support a parole decision.

3   *See Sass*, 461 F.3d 1123; *McQuillion v. Duncan,* 306 F.3d 895, 904 (9th Cir. 2002) (both holding

4   that the some-evidence standard applies to parole decisions). These decisions are not clearly

5   established federal law because, although the Supreme Court has applied the some evidence

6   standard to a prison disciplinary hearing, it has never applied it in the context of a discretionary

7   parole decision. *Superintendent v. Hill*, 472 U.S. 445, 457 (1985) (applying the some evidence

8   standard to prison disciplinary proceedings).

9       Because the Supreme Court developed the some-evidence standard in the context of a

10   prison disciplinary hearing, which is fundamentally different from a parole proceeding,

11   application of this standard to a parole decision cannot be clearly established federal law. *See*

12   *Carey v. Musladin*, __U.S.__, 127 S. Ct. 649, 654 (2006). The Supreme Court had made clear in

13   a recent decision that when no Supreme Court decision squarely addresses the issue at hand, it

14   cannot be said that the state court unreasonably applied clearly established federal law. *Wright v.*

15   *Van Patten*, __S.Ct.__, 2008 WL 59980 *3-4 (Jan. 7, 2008).

16       The level of due process protections to which an inmate is entitled is directly related to the

17   level of his liberty interest and the nature of the decision being made. *Greenholtz*, 442 U.S. at

18   13-14. At a disciplinary hearing, the inquiry is retrospective and factual in nature, and the

19   prisoner faces a potential loss of credits. *Id.* at 14. A decision to parole an inmate is

20   fundamentally different. First, the level of liberty interest an inmate has in the possibility of

21   parole is markedly different from that of an inmate who is facing a loss of credits. *Wolff v.*

22   *McDonnell*, 418 U.S. 539, 560-61 (1974) (contrasting the different interests that a parolee and a

23   prisoner may have in the deprivation of their liberty); *Greenholtz*, 442 U.S. at 13-14

24

---

25      1. The Supreme Court has cited *Greenholtz* approvingly for the proposition that the "level

26   of process due for inmates being considered for release on parole includes opportunity to be heard and notice of any adverse decision" and noted that *Greenholtz* remained "instructive for [its]

27   discussion of the appropriate level of procedural safeguards." *Wilkinson v. Austin*, 545 U.S. 209, 228-29 (2005).

28

Answer; Mem. of P.&A.                              *Boatman v. Ayers*
                                                  C 07-3412 SI

1  (distinguishing the parole suitability decision from the parole revocation and prison disciplinary

2  decisions). Second, a parole decision is not factual in nature. Rather, it is a predictive and

3  subjective decision requiring discretionary analysis of the inmate's suitability for release.

4  *Greenholtz*, 442 U.S. at 9-10. In fact, due to the discretionary nature of parole decisions, the

5  Supreme Court held that, in contrast to prison disciplinary hearings, due process does not require

6  the decision-maker to specify the evidence showing that a prisoner is unsuitable for parole. *Id.* at

7  15. Thus, the only clearly established Supreme Court authority describing the process due when

8  there is a federal liberty interest in parole simply requires that the inmate be given an opportunity

9  to be heard and be advised of the reasons he was not found suitable for parole. *Id.* at 16.

10      Here, Petitioner does not contend that he failed to receive the protections outlined in

11  *Greenholtz*. (*See generally* Pet.) Because he received all the process due under the only United

12  States Supreme Court law finding a federal liberty interest in discretionary parole release, the

13  state court decision upholding the parole denial was not contrary to or an unreasonably

14  application of any United States Supreme Court law. *See* 28 U.S.C. § 2254(d).

15      **C.    Even if the Some-Evidence Standard Applies, Petitioner's Habeas Petition
            Must Be Denied Because There Is Some Evidence to Support the Parole**
16          **Denial as Found by the State Court.**

17      If the requirement of "some evidence" to support a Board's parole decision is clearly

18  established federal law and thus applicable to this case, "the 'some evidence' standard is

19  minimally stringent, such that a decision will be upheld if there is any evidence in the record that

20  could support the conclusion reached by the [parole authority]." *Hill*, 472 U.S. at 456 (stating

21  that the "Due Process Clause does not require courts to set aside decisions of prison

22  administrators that have some basis in fact"). Determining whether this standard is satisfied does

23  not require examination of the entire record, independent assessment of the credibility of

24  witnesses, or the weighing of evidence. *Id.* at 455. Indeed, in examining the record, a court is

25  not to make its own assessment of the credibility of witnesses or re-weigh the evidence. *Id.* The

26  question is whether there is *any* reliable evidence in the record that could support the decision

27  reached. *Id.* In *Hill*, the Supreme Court determined that even meager and indirect evidence

28  satisfy the some evidence standard of review. *Id.* at 457.

Answer; Mem. of P.&A.

*Boatman v. Ayers*
C 07-3412 SI

1    Here, the state courts determined that the Board's decision is supported by some evidence in

2    the record as to Petitioner's commitment offense and the escalating pattern of his criminality.

3    (Ex. 9-11.) In light of these findings by the state court, Petitioner cannot show that the state court

4    decision was contrary to or was an objectively unreasonable application of clearly established

5    federal law. *Williams v. Taylor*, 529 U.S. 362, 409, 411, 413 (2000). He also cannot show, by

6    clear and convincing evidence, that the state court decision was based on an unreasonable

7    determination of the facts because factual determinations by state courts are presumed correct.

8    *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

9    The state court properly upheld the Board's decision because there is some evidence that

10   Petitioner committed the offense in an especially cruel and callous manner, in a premeditated

11   manner, committed without feeling bad about hurting others and in a manner demonstrating an

12   exceptionally callous disregard for human suffering. (Ex. 2 at 64-65.) Petitioner and his crime

13   partners planned to rob a store to support their cocaine habit. (Ex. 2-4.) Petitioner provided a

14   loaded gun, stolen from his step-mother, because Jones's sawed-off shotgun was too big and

15   could not be hidden. (*Id.*) Petitioner knew his partner Jones might actually use the gun during

16   the robbery because Jones fired a shot while they were gathered around talking to their friend

17   Chris Besel before the robbery. (*Id.*) Petitioner also knew that Jones might actually use the gun

18   because Jones told Petitioner and his friends not to worry about being discovered. (*Id.*)

19   Petitioner also provided the car get-away car. (*Id.*)

20   Although Petitioner did not actually shoot the innocent store clerk, Petitioner stood by and

21   offered no assistance while the victim was shot. (Ex. 2-4.) Even after the shooting, Petitioner

22   did not offer assistance but rather allowed the victim to bleed to death. (*Id.*) Petitioner did not

23   care if people suffered, thus, the reason for the murder is trivial in comparison to the hurt it

24   caused. And even afterwards, Petitioner tried to cover-up his involvement by deflating the tire

25   on his car to make it appear as if the car was disabled, and by wiping down the gun. (*Id.*) Then

26   he went back to his friend's house in search of more drugs. (*Id.*) The relevant question here is

27   whether there is any evidence, a modicum of evidence in the record to support the Board's

28   decision. *Hill*, 472 U.S. at 455. The state court found there was, and that decision is entitled to

Answer; Mem. of P.&A.                                                      *Boatman v. Ayers*
                                                                          C 07-3412 SI

1  deference under AEDPA.

2      Similarly, the state court determination that there is some evidence to support the Board's

3  findings as to Petitioner's escalating criminality is entitled to deference under AEDPA.

4  Petitioner's active involvement in the robbery/murder despite prior arrests for rape, grand theft,

5  petty theft, and subsequent convictions and jail time, shows that he failed to profit from society's

6  prior attempts at rehabilitation.  Thus, as found by the state court, there is some evidence to

7  support this finding by the Board.

8      In summary, although Petitioner disagrees with how the evidence was weighed and

9  evaluated by the Board and the state courts, (*see* Pet.) neither Petitioner, nor this Court, may re-

10  weigh the evidence or assess the credibility of the evidence presented to the Board. *Hill*, 472

11  U.S. at 455.  Therefore, because the state court decisions are entitled to deference under §

12  2254(d), the petition should be denied. *Andrade*, 538 U.S. at 75.

13                                            **II.**

14  **THERE IS NO EVIDENCE THAT BOARD DENIED PETITIONER PAROLE**
    **UNDER PRESSURE FROM THE GOVERNOR.**

15

16      Petitioner alleges that his right to due process was violated when the Board denied him

17  parole under the pressure exerted by the Governor because the only difference between the April

18  2005 hearing when he was granted parole and the June 2006 hearing was the Governor's

19  intervening parole reversal.  Petitioner alleges, therefore, that he was denied his right to a fair and

20  impartial panel.  There is no evidence in the record, however, to support this allegation.

21      During the June 2006 hearing, the Board never mentioned the Governor's decision, and the

22  Board did not say that it was relying in any manner on the Governor's prior decision, or that the

23  Governor's decision had any bearing on its decision to denying Petitioner parole. (*See* Ex. 2.)

24  In fact, the only person to mention the Governor's August 2005 decision was the attending

25  Deputy District Attorney who opposed parole for Petitioner. (Ex. 2 at 56.)

26      The parole-release decision is subtle and depends on "an amalgam of elements, some of

27  which are factual but many of which are purely subjective appraisals by the Board members

28  based upon their experience with the difficult and sensitive task of evaluating the advisability of

1   parole release." *Greenholtz*, 442 U.S. at 9-10.  Thus, in a parole decision, "there is no set of facts

2   which, if shown, mandate a decision favorable to the individual." *Id.* at 10.  Here, the presiding

3   panel at Petitioner's June 2006 made a subjective-predictive decision based on the evidence

4   presented and the panel's experience.  Moreover, the June 2006 panel had evidence before it of

5   Petitioner admitting to taking a leadership role in the planning and the execution of the robbery

6   that lead to the murder.  (Ex. 2 at 9-10, 53.)  Furthermore, Petitioner had no objection to the

7   presiding panel.  (*Id.* at 6.)  Petitioner has not set forth any evidence that the Board's decision

8   was in any way influenced by, or was due to the pressure from, the Governor.  Therefore, this

9   claim should be denied.

10                                    **III.**

11          **THE BOARD'S DECISION DID NOT VIOLATE THE TERMS OF
           PETITIONER'S PLEA AGREEMENT.**

12

13          Petitioner alleges that the Board's decision violated the terms of his plea agreement because

14   the Board relied on the District Attorney's opposition to parole and because it relied on the

15   circumstances of his commitment offense that would support elements of first-degree murder

16   when he was only convicted of second-degree murder.  Petitioner alleges that the impossibility of

17   parole violates his plea agreement because he pled to second-degree murder with the possibility

18   of parole.  (Ex. 12-13.)

19          First, Petitioner's claim is factually inaccurate because he continues to have the possibility

20   of parole.  The June 2006 decision was a denial of parole consideration for two years, not a flat

21   out denial that Petitioner is never eligible for parole.  (Ex. 2.)  Furthermore, there is no evidence

22   that as part of Petitioner's plea, the District Attorney's Office would never oppose parole for

23   Petitioner.  (Ex. 12-13.)  There was also no promise that the parole authority would not consider

24   the entire circumstances of his commitment offense.  (*Id.*)

25          "Plea agreements are contractual in nature and are measured by contract law standards."

26   *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993).  And, if a guilty plea was

27   "induced by promises, the essence of those promises must in some way be made known."

28   *Santobello v. New* York, 404 U.S. 257, 261-62 (1971).  In this case, the only two conditions to

Answer; Mem. of P.&A.                                              *Boatman v. Ayers*
                                                                   C 07-3412 SI

1   Petitioner's plea agreement were that Petitioner would be housed in the Youth Authority until he

2   turned 25, if that was acceptable to the Youth Authority, and that Petitioner would not be

3   sentenced until after his crime partner Jones was sentenced. (Ex. 12-13.) Petitioner has failed to

4   make known the essence of any other alleged promise made by the prosecution. *Santobello*, 404

5   U.S. at 261-62. On petition for writ of habeas corpus, petitioner has the burden of sustaining his

6   allegations by a preponderance of the evidence. *Walker v. Johnston*, 312 U.S. 275, 287 (1941).

7   Petitioner has failed to meet his burden; therefore, Petitioner's claim that his plea agreement was

8   violated must be denied.

9   ## CONCLUSION

10  Petitioner's habeas corpus petition must be denied because the California courts' decisions

11  upholding the Board's parole denial are not contrary to, nor an unreasonable application of,

12  United States Supreme Court authority, and the decisions were not based on an unreasonable

13  determination of the facts. Also, Petitioner received all due process he is entitled to:  an

14  opportunity to be heard and a written copy of the Board's decisions. And even if the Court

15  applies the some-evidence standard, the Board's findings were supported by some evidence in

16  the record. Moreover, there is no merit to Petitioner's claim that the Board denied parole under

17  \\\

18  \\\

19  \\\

20

21

22

23

24

25

26

27

28

Answer; Mem. of P.&A.

1  pressure from the Governor.  Finally, there is no merit to Petitioner's claim that the Board's

2  decision violated the terms of his plea agreement.  Thus, Respondent respectfully requests that

3  the Court deny Petitioner's habeas corpus petition.

4      Dated:  January 24, 2008

5                          Respectfully submitted,

6                          EDMUND G. BROWN JR.
                           Attorney General of the State of California

7                          DANE R. GILLETTE
                           Chief Assistant Attorney General

8
                           JULIE L. GARLAND
9                          Senior Assistant Attorney General

10                         ANYA M. BINSACCA
                           Supervising Deputy Attorney General

11

12

13                         ELIZABETH S. KIM
                           Deputy Attorney General
                           Attorneys for Respondent

14

15
   40209365.wpd
16 SF2007403327

17

18

19

20

21

22

23

24

25

26

27

28

Answer; Mem. of P.&A.                                    *Boatman v. Ayers*
                                                         C 07-3412 SI

## CERTIFICATE OF SERVICE BY U.S. MAIL

Case Name:  **Boatman v. Ayers**
No.:        **C 07-3412 SI**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On January 24, 2008, I served the following documents:

ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS;
MEMORANDUM OF POINTS AND AUTHORITIES
(W/EXHIBITS 1-13)

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

Christopher Boatman                 Amitai Schwartz, Esq.
D-65055                             Law Offices of Amitai Schwartz
San Quentin State Prison            Watergate Towers
1 Main Street                       2000 Powell Street, Suite 1286
San Quentin, CA 94964              Emeryville, CA 94608
       *In Pro Se*                         *[Courtesy Copy at Mr. Schwartz's*
       *D-65055*                           *Request]*

## Electronic Mail Notice List

I have caused the above-mentioned document to be electronically served on the following person, who is currently on the list to receive e-mail notices for this case:

**NONE**

## Manual Notice List

The following are those who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing):

Christopher Boatman
D-65055
San Quentin State Prison
1 Main Street
San Quentin, CA 94964
          *In Pro Se*
          *D-65055*

Amitai Schwartz, Esq.
Law Offices of Amitai Schwartz
Watergate Towers
2000 Powell Street, Suite 1286
Emeryville, CA 94608
          *[Courtesy Copy at Mr. Schwartz's*
          *Request]*

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on January 24, 2008, at San Francisco, California.

_____
          S. Redd
          Declarant

_____
          Signature

SF2007403327
40209741.wpd

2