# EXHIBIT 9

HC06CRWR678180-GDH-cm

SUPERIOR COURT OF CALIFORNIA, COUNTY OF FRESNO

CENTRAL DIVISION

| | |
|---|---|
| In re<br>CHRISTOPHER BOATMAN,<br>Petitioner<br>On Habeas Corpus. | No. 06CRWR678180 Dept. 71<br><br>ORDER |

Having considered the petition for writ of habeas corpus filed on December 18, 2006, the court finds that existing evidence does not warrant the requested relief.

Petitioner challenges the Parole Board's decision to deny his parole. According to the record, petitioner was convicted of second-degree murder and sentenced to 15 years to life, plus a one-year enhancement for use of a firearm. The Board of Parole Hearings granted petitioner's parole on April 6, 2005, after having previously denied him parole six times. (Exhibit A to petition.) However, the Governor reversed the Board's decision on August 24, 2005. (Exhibit B to petition.)

On June 29, 2006, the Parole Board conducted another review of petitioner's case and denied his parole. (Exhibit C to

1  petition, pp. 64-66.) The Board relied largely on the seriousness
2  of the underlying offense. (*Id.* at p. 64.) The Board found that
3  "[t]he crime was very cruel", and "was done or planned without
4  feeling bad about hurting others." (*Id.* at 64:11-13.) The Board
5  also noted that "[t]he reason for the crime was small compared to
6  the hurt it caused." (*Id.* at 64:14-15.) In addition, the Board
7  noted that the crime was carried out in a cruel and callous
8  manner, and that it was an execution-style murder. (*Id.* at 64:19-
9  23.) "The motive for the crime was inexplicable in the [*sic*]
10 relationship to the offense." (*Id.* at 64:25-26.) The Board
11 pointed out that the victim had given the petitioner the money,
12 that petitioner had gotten the gun and put bullets in it, and
13 drove down to the crime scene. (*Id.* at 65:1-3.) Petitioner knew
14 that someone was going to get killed, especially because
15 petitioner's associate made a statement that there would be no
16 witnesses. (*Id.* at 65:3-6.)
17     In addition, the Board noted that although petitioner
18 has no record of prior violence or assaultive behavior, he was on
19 probation at the time of the underlying offense, so petitioner had
20 failed to profit from society's attempt to correct his criminal
21 behavior. (*Id.* at 65:9-12.) Prior to the underlying offense,
22 petitioner had raped a minor, and had also snatched a woman's
23 purse. (*Id.* at 65:14-16.) Therefore, the petitioner's pattern of
24 criminal conduct was escalating, and he was "like a one-man crime
25 spree." (*Id.* at 65:10, 17-18.) However, the Board did observe
26 that petitioner had been doing very commendable things since his
27 incarceration, and that he should keep going because he was on the
28 right track. (*Id.* at 65:19-22.)

1    Whether or not this court agrees with the Board's
2 conclusion, its decision may not be overturned so long as it is
3 supported by "some evidence." (See, e.g., *In re Fuentes* (2005) 135
4 Cal.App.4th 152, *In re Shaputis* (2005) 135 Cal.App.4th 217, *In re
5 Lowe* (6th Dist. 2005) 130 Cal.App.4th 1405, *Rosas v. Nielsen* (9th
6 Cir. 2005) 428 F.3d 1229, *In re DeLuna* (2005) 126 Cal.App.4th 585,
7 *In re Scott* (2005) 119 Cal.App.4th 871, *In re Van Houten* (2004)
8 116 Cal.App.4th 339, *Biggs v. Terhune* (9th Cir. 2003) 334 F.3d 910,
9 and *In re Rosenkrantz* (2002) 29 Cal.4th 616.) To the extent that
10 petitioner asks the court to apply a different standard, the court
11 must follow the holdings of the Supreme Court and Courts of
12 Appeal, which require application of the "some evidence" standard
13 of review.

14    Here, the court finds that there was at least some
15 evidence that releasing petitioner could pose an unreasonable risk
16 to society or a threat to public safety, because of the violent
17 nature of the original offense, and the escalating pattern of
18 petitioner's criminal conduct before the murder. The facts on the
19 record tend to show that the underlying offense was "especially
20 heinous, atrocious, or cruel." Petitioner participated in an
21 armed robbery that resulted in the execution-style murder of a 19-
22 year-old man. Petitioner provided the loaded gun that was used to
23 kill the victim, and he participated in the crime even after he
24 heard his associate's statement that there would be no need to
25 worry about witnesses. Petitioner assumed a leadership role in
26 the crime, and volunteered to stand lookout rather than just drive
27 to the store. Therefore, even though petitioner claims that he
28 thought no one would get hurt, the Board was entitled to conclude

1  that petitioner had reason to believe that innocent people might
2  be hurt during the robbery, and that petitioner had not
3  sufficiently accepted responsibility for his part in the victim's
4  murder.

5  Petitioner had also been involved in other crimes before
6  the murder, including sex with a 14-year-old girl when he was 18,
7  and snatching a woman's purse. (Exhibit C, pp. 12-14.) Petitioner
8  spent six months in jail for grand theft related to the purse-
9  snatching incident. (Id. at p. 15.) Petitioner also stole tapes
10 from a music store. (Id. at p. 14.) He was on probation at the
11 time of the murder. (Id. at p. 65.) Therefore, the Parole Board
12 had at least some evidence to believe that the murder was not an
13 isolated incident, but rather part of an escalating pattern of
14 criminal conduct, and that petitioner might not profit from
15 society's efforts to rehabilitate him in prison. Consequently,
16 the court cannot overturn the Parole Board's decision.

17 Petitioner has also argued that the Board is estopped
18 from revisiting the issue of whether to grant his parole, since
19 the Board's prior decision to grant parole acts as collateral
20 estoppel and thus bars re-litigation of the same question already
21 decided at the prior board hearing. However, the doctrine of
22 collateral estoppel only applies where there was a final judgment
23 on the merits in the prior proceeding. (Lucido v. Superior Court
24 (1990) 51 Cal.3d 335, 341.) Here, there was no final "judgment",
25 since the Governor overturned the Parole Board's decision before
26 it became final.

27 In any event, petitioner's argument would lead to an
28 inequitable and absurd result, since it would take away the Parole

1  Board's power to examine an inmate's eligibility for parole in any
2  case where the Board had previously granted parole but the
3  Governor had overturned the Board's decision. Thus, according to
4  petitioner's logic, the Board would have to grant the inmate's
5  parole automatically without examining whether new events or
6  information might warrant denial. The Governor would then be
7  placed in the role of a *de facto* parole board, since only the
8  Governor would have the power to grant or deny parole. Barring
9  the Board from further review of the parole status of an inmate
10 would thus defeat the legislature's intent to have the Board
11 conduct the initial parole hearing, and to have the Governor
12 approve or reverse the Board's decision. The court cannot adopt a
13 rule that would lead to such inequitable results.

The petition is denied.

DATED this __5th__ day of January, 2007.

~~H. CRITTICK~~
Hilary A. Chittick ~~GARY D. HOFF~~
Judge of the Superior Court