1  Amitai Schwartz (State Bar #55187)
   Law Offices of Amitai Schwartz
2  Watergate Towers
   2000 Powell Street, Suite 1286
3  Emeryville, CA 94608
   (510) 597-1775 (tel.)
4  (510) 597-0957 (fax)
   attorneys@schwartzlaw.com
5
   Attorney for Petitioner
6    Christopher Boatman

7

8              UNITED STATES DISTRICT COURT

9         FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 CHRISTOPHER BOATMAN,              )
                                     )   No. C-07-3412 SI (PR)
12        Petitioner,                )
                                     )
13     vs.                           )   PETITIONER'S TRAVERSE AND
                                     )   REPLY TO ANSWER TO PETITION
14 ROBERT AYERS, Warden,             )   FOR WRIT OF HABEAS CORPUS;
                                     )   MEMORANDUM OF POINTS AND
15        Respondent.                )   AUTHORITIES IN SUPPORT
                                     )
16 _____  )   Hon. Susan Illston

17

18

19

20

21

22

23

24

25

26

27

28 No. C-07-3412 SI (PR)
   Petitioner's Traverse and Reply to Answer

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

TRAVERSE ........................................................................................................ 3

FACTS ................................................................................................................ 4

    I.     Facts of the 1986 Commitment Offense ......................................... 5

    II.    Prior Criminal Record ...................................................................... 6

    III.   Prior Parole Suitability Hearings .................................................... 6

    IV.   The Current Decision Finding Boatman to Be A Danger
            to Society ......................................................................................... 11

    V.    Boatman's Expressions of Remorse ................................................ 12

    VI.   Boatman's Disciplinary Record ....................................................... 13

    VII.  Boatman's Record in Prison and His External Support System ..... 13

    VIII. Boatman's Psychological Evaluations ............................................ 13

ARGUMENT ...................................................................................................... 14

    A.    The California Parole Scheme for Indeterminate Life Prisoners ... 14

    B.    The California Parole Scheme Creates a Clearly Established
            Liberty Interest Subject to Due Process ......................................... 16

    C.    The Unchangeable Facts Relied on By the Parole Board to Find
            Christopher Boatman Unsuitable for Parole Do Not Meet
            Due Process Requirements .............................................................. 17

            1.  The Underlying Offense .......................................................... 17

            2.  Escalation of Severity and Violence ...................................... 23

    D.    Denial of Parole Suitability on this Record is Arbitrary ................ 25

CONCLUSION ................................................................................................... 25

1

TABLE OF AUTHORITIES

2

<u>Cases</u>

3

Biggs v. Terhune
  334 F.3d 910 (2003)                               17, 23

4

Boatman v. Brown
  Ninth Circuit Court of Appeals, No.  05-16199         1

5

6

Boatman v. Schwarzenegger
  No. 06-5234 SI, 2008 WL 728889 (N.D. Cal. 2008)      2, 22, 25

7

Hayward v. Marshall
  512 F.3d 536 (9th Cir. 2008)     1, 2, 12, 13, 16, 17, 22, 23, 25

8

In Re Barker
  151 Cal.App.4th 346 (2007)                        20

9

10

In Re Burdan
  2008 WL 757033 (Cal. Court of Appeal, March 24, 2008)   21

11

In Re Dannenberg
  34 Cal. 4th 1061
  cert. denied, 546 U.S. 844 (2005)                15

12

13

In Re Elkins
  144 Cal.App. 4th 475 (2006)                  19, 20

14

15

In Re Gray
  151 Cal.App.4th 379 (2007)                 17, 19

16

In Re Lee
  146 Cal. App.4th 1400 (2006)               19, 21

17

18

In Re Rosenkrantz
  29 Cal 4th 616 (2002)
  cert. denied, 538 U.S. 980 (2003)            15

19

20

In Re Weider
  145 Cal.App.4th 570 (2006)                  21

21

Irons v. Carey
  505 F.3d 846 (9th Cir. 2007)                25

22

23

People v. Robertson
  34 Cal. 4th 156 (2004)                    19

24

Quintero-Salazar v. Keisler
  506 F.3d 688 (9th Cir. 2007)                24

25

26

Sass v. California Board of Prison Terms
  461 F.3d 1123  (9th Cir. 2006)         16, 17, 23

27

28

Statutes and Regulations

| | |
|---|---|
| 28 U.S.C. § 2254(d) | 14 |
| Cal. Const. Art. V, § 8(b) | 14 |
| Cal. Pen. Code § 187 | 6 |
| Cal. Pen. Code § 189 | 6 |
| Cal. Pen. Code § 3040 | 14 |
| Cal. Pen. Code § 3041(a) | 15 |
| Cal. Pen. Code § 3041(b) | 15 |
| Cal. Pen. Code § 3052 | 15 |
| 15 Cal. Code Regs. § 2402(a) | 18 |
| 15 Cal. Code Regs. § 2402(b) | 15 |
| 15 Cal. Code Regs. § 2402(c) | 15, 16, 19, 23 |
| 15 Cal. Code Regs. § 2402(d) | 15, 16 |
| 15 Cal. Code Regs. 3312(a)(2) | 9 |
| 15 Cal. Code Regs. 3312(a)(3) | 9 |

INTRODUCTION

1

2      Petitioner Christopher Boatman respectfully submits this Traverse and

3  Reply to the Answer to Petition for a Writ of Habeas Corpus, filed on or about

4  January 24, 2008.

5      Petitioner is serving a sentence of 16 years to life under California's

6  indeterminate sentence law for second degree felony murder with a vicarious

7  firearm use enhancement.  He pled guilty.   The murder occurred in 1986 when

8  Boatman was 20 years old.  Boatman was not the shooter.  Over the 22 year period

9  of his confinement he has been, by every account, an exemplary prisoner.  He has

10  job prospects outside the prison system and the support of his family and many

11  friends.

12      In 2002 Boatman was found suitable for parole by the California Board of

13  Prison Terms.[1]  The Governor of California overturned the finding of suitability.

14  He based the decision on the commitment offense, offenses that occurred prior to

15  the commitment offense, and Boatman's drug usage as a young man before he was

16  incarcerated.  This court sustained the Governor's decision.  That decision is on

17  appeal to the Ninth Circuit.  Boatman v. Brown, Ninth Circuit Court of Appeals,

18  No.  05-16199. It was argued on January 14, 2008, but submission has been

19  deferred pending disposition of a petition for panel rehearing and en banc hearing

20  in Hayward v. Marshall, 512 F.3d 536 (9th Cir. 2008).

21      In 2003 the Board found Boatman unsuitable despite the absence of

22  discipline and despite Boatman's steady and significant progress in preparing

23  himself for the responsibility of freedom.  Denial was based on the commitment

24  offense and offenses preceding the commitment offense.

25

26

27      [1]  Throughout this Memorandum the Board of Prison Terms and its successor
the Board of Parole Hearings will be referred to interchangeably as "the Board."

28  No. C-07-3412 SI (PR)
Petitioner's Traverse and Reply to Answer                    1

1       In 2005 the Board found Boatman suitable for parole.  But the Governor

2   again reversed the Board.  He found Boatman unsuitable based on the commitment

3   offense and offenses preceding the commitment offense.  This court sustained the

4   Governor's decision in a written order filed March 17, 2008.  Boatman v.

5   Schwarzenegger, No. 06-5234 SI, 2008 WL 728889 (N.D. Cal. 2008).

6       In 2006, despite Boatman's continuing progress, freedom from discipline,

7   freedom from drugs, steady education, support of his family and friends, and job

8   offers,  the Board found him unsuitable for parole based on the commitment

9   offense and offenses preceding the commitment offense.  The Board also denied

10  Boatman any parole suitability for an additional two years on the ground that "it is

11  not reasonable to expect that parole would be granted at a hearing in the following

12  two years."  Answer, Exh. 2, p. 64:16-19; Reply, Exh. P, p. 64:16-19.

13      In its order denying the petition in Boatman v. Schwarzenegger, No. 06-

14  5234 SI, this court characterized this parole consideration history as "rather

15  interesting."  2008 WL 728889 *2 .  We submit that it is something more: it is

16  bizarre and arbitrary.  The parole consideration history weighs heavily in

17  Boatman's favor.  See Hayward, 513 F.3d at 544, 546.  Nothing changed between

18  Boatman's very first parole suitability hearing in 1996 and his latest hearing in

19  2006 to warrant this inconsistent and varied treatment –  except that Boatman

20  successfully made extraordinary efforts at redemption and rehabilitation as the

21  years passed.

22      The 2006 decision to find Boatman unsuitable for parole consideration for

23  two more years is the subject of this petition.  The Board's decision is not

24  supported by "some evidence." It is otherwise arbitrary.  See Hayward, 512 F.3d at

25  542; Boatman v. Schwarzenegger, 2000 WL 728889 *3  n.2 and *6.   Immutable

26  events dating back 22 years are being used to preclude Boatman from parole

27  despite the absence of any evidence that he would pose an imminent danger if

28

No. C-07-3412 SI (PR)
Petitioner's Traverse and Reply to Answer                        2

1  released from prison under supervision.  Christopher Boatman's federal

2  constitutional right to due process of law requires that this court exercise its

3  authority and responsibility to safeguard the constitutional process.

4      The writ should be granted.

5                          TRAVERSE

6      1.    Petitioner admits paragraphs 1 through 3 of the Answer.

7      2.    Petitioner admits the first clause of the first sentence of paragraph 4

8  of the Answer; he denies the characterization of the facts alleged in the remainder

9  of paragraph 4.  Pursuant to 28 U.S.C. § 2248, he denies the facts to the extent

10  they are contradicted by the exhibits in support of the Petition, in support of the

11  Answer, and in support of this Traverse and Reply.

12      3.    Petitioner denies the characterization of facts alleged in numbered

13  paragraph 5 of the Answer.  Pursuant to 28 U.S.C. § 2248, he denies the facts to

14  the extent they are contradicted by the exhibits in support of the Petition, in

15  support of the Answer, and in support of this Traverse and Reply.

16      4.    Petitioner denies the characterization of facts alleged in numbered

17  paragraph 6 of the Answer.  Pursuant to 28 U.S.C. § 2248, he denies the facts to

18  the extent they are contradicted by the exhibits in support of the Petition, in

19  support of the Answer, and in support of this Traverse and Reply.

20      5.    Petitioner denies the characterization of facts alleged in paragraph 7

21  of the Answer.  Pursuant to 28 U.S.C. § 2248, he denies the facts to the extent they

22  are contradicted by the exhibits in support of the Petition, in support of the

23  Answer, and in support of this Traverse and Reply.  Petitioner denies the legal

24  conclusion alleged in the last sentence of  paragraph 7.

25      6.    Petitioner admits the facts alleged in paragraph 8 of the Answer, but

26  denies the characterization of those facts, except that petitioner denies that rape

27  charges were dismissed; sexual intercourse with a minor charges were dismissed.

28  No. C-07-3412 SI (PR)
   Petitioner's Traverse and Reply to Answer                3

1    Pursuant to 28 U.S.C. § 2248, he denies the facts to the extent they are

2    contradicted by the exhibits in support of the Petition, in support of the Answer,

3    and in support of this Traverse and Reply.

4            7.      Petitioner admits the allegations of paragraphs 9 though 15

5    of the Answer.

6            8.      Petitioner denies the legal conclusion of paragraph 16 of the Answer.

7            9.      Petitioner denies the facts alleged in paragraph 17 of the Answer.

8            10.     Petitioner denies the legal conclusion of the first clause of paragraph

9    18 of the Answer.  Petitioner admits that he expressed no objection to the 2006

10   hearing panel.

11           11.     Petitioner denies the legal conclusions alleged in paragraphs 19

12   through 21, and 23 of the Answer.

13           12.     In response to paragraph 22 of the Answer, Petitioner alleges that an

14   evidentiary hearing may be useful so that the court can assess petitioner's

15   credibility and satisfy itself that no evidence supports a finding that he is

16   unsuitable for parole.

17           The Petition should be granted.

18                                          FACTS

19           Respondent agrees that Boatman has exhausted his state remedies for the

20   claims asserted in the petition.  Answer, ¶14.  The Fresno County Superior Court

21   issued a reasoned decision denying the petition.  See Answer, Exh. 9.  The Fresno

22   court recited the findings of the Board and concluded that "some evidence"

23   supported the Board's decision.  However, the superior court record was nothing

24   more than the Board's record.  The court did not review any additional evidence.

25   The Fresno court's conclusions were based solely on immutable events: the facts

26   and circumstances of the murder in1986 and Boatman's criminal conduct prior to

27   the commitment offense.

28   No. C-07-3412 SI (PR)
     Petitioner's Traverse and Reply to Answer                4

I.    Facts of the 1986 Commitment Offense

Christopher Boatman was born on July 25, 1965.[2]  Shortly before his 21st birthday, on May 29, 1986, he stood watch outside a Fresno County, California, convenience store while Harold Jones went in to rob the store.  Probation Report, Answer, Exh. 4.  Prior to their arrival at the store, Boatman had supplied Jones with a gun.  He also provided the car that they used.  Id. After Jones robbed the clerk, nineteen year old John Sousa,  Boatman drove the getaway car.  Id. Boatman was arrested three days later.  Id.

Before the robbery and resulting murder, Boatman had been freebasing crack cocaine.  Id.  Boatman accompanied Jones and another man, James Montgomery, to the store, expecting that they would rob the store and get money to buy drugs.  Id. Initially, he planned to wait in the car, but he changed his mind because he was afraid Jones would not fairly divide the proceeds.  Id.  Instead, Boatman stood watch.  Id.  Jones demanded money from the clerk.  Id.  After the clerk complied and gave him a hundred dollars, Jones shot him in the back of the neck.  Id.  With Boatman driving, the three men fled.  Id.

When Boatman returned home, he slashed his tires to make it look like his car had been disabled.  Id.

Boatman expressed remorse practically immediately.  See Reply, Exh. C ("2002 Governor's Decision")("Mr. Boatman has been remorseful from the outset"); Answer, Exh. 4 at 4 (Probation Report)("I sorry for this what I have done, but I can't bring back the life of John Suza [sic].... So God help John and his family because if it wasn't my car and my gun this would never of happened."); Answer, Exh. 13 (sentencing transcript)("Yes, you know, I am sorry for what I have done, you know, and I can't bring back the life of John Sousa").

---

[2]   2006 Life Prisoner Evaluation Report, Answer, Exh. 3 at 3; Probation Report, Answer, Exh. 4 at 6; Reply, Exh. G.

1      Boatman was charged with felony murder under California law for his

2  participation in a robbery that resulted in death.  See Cal. Pen. Code §§ 187, 189.

3  On October 22, 1986, he pled guilty to second degree murder. Answer, Exh. 12,

4  Plea Transcript.  Following the acceptance of his plea, he was sentenced to an

5  indeterminate term of 15 years to life for the murder and another year for vicarious

6  use of a firearm, resulting in a sentence of 16 years to life.  Answer, Exhs. 1, 13.

7      II.     Prior Criminal Record

8      Boatman had no juvenile criminal record.  There is no evidence that as a

9  young adult any of Boatman's prior acts involved violence.  In 2002 The Board

10  recognized that Boatman "has no history of violence prior to the commitment

11  offense."  Reply, Exh. K (paraphrasing psychological report).  The prior

12  convictions are described in the 2006 Life Prisoner Evaluation Report.  Answer,

13  Exh. 3 at 2-3; Reply, Exh. G.  Although Boatman was arrested on April 30, 1984

14  for two counts of rape with force and fear, "the charges were reduced to illegal

15  sexual intercourse with a minor, then dismissed."  Id. at 3.  According to the

16  Board, "the alleged victim was a 14 year old high school truant."  According to the

17  Report, Boatman stated she tried "to deflect responsibility by claiming Boatman

18  raped her."  Id.

19      The rape and sexual intercourse charges were not even listed by the

20  probation officer in his 1987 sentencing report to the Fresno Superior Court,

21  despite the fact that this offense occurred in Fresno County.  Answer, Exh. 4.

22      Boatman's other charges – grand theft and petty theft – involved a purse

23  snatch and possession (not use) of a tire iron and stealing some tapes from a store.

24  Id.

25      III.    Prior Parole Suitability Hearings

26      At his first parole suitability hearing on June 18, 1996, the hearing panel

27  told Christopher Boatman to remain discipline free: "that's the most important

28  No. C-07-3412 SI (PR)
Petitioner's Traverse and Reply to Answer                                6

1  thing you can do." Reply, Exh. H, p. 38:17-19. They told him to continue to

2  upgrade vocationally. Id. at 39:1-2. The presiding commissioner said, "I don't

3  think I've ever seen anybody come in here on their initial hearing with as much

4  preparation as you've done and it's – you're definitely to be commended for that."

5  Id. at 39:26-40:3. Another commissioner said, "I was particularly impressed with

6  the way you're doing and how you're progressing. I thought if I went back

7  through the C-file, I'd find out where you had made some dramatic change along

8  the way. But when I looked at the C-file, I saw where you started at the outset – ...

9  – and you expressed remorse and it looks like that was your turnaround point. So

10  you're doing good. Keep it up." Id. at 40:23-41:6.[3]

11       At his first subsequent parole suitability hearing on June 30, 1998, the

12  Board found Boatman unsuitable. The panel decided that a hearing would not be

13  appropriate for two more years. The presiding commissioner stated:

14       "The prisoner has not completed necessary programming which is
         essential. It would be very advantageous for him to complete the
15       Machine Shop training. And also you should – and I'm sure you plan
         to remain active in NA and continue on with that therapy. And take
16       advantage of any therapy that becomes available because it will help
         build a stronger wall between you and narcotic use. And also we
17       recommend that you remain disciplinary-free and upgrade
         vocationally and educationally at every opportunity and also
18       participate in self-help and therapy programming as they become
         available. And of course the most important thing is that NA. Stay in
19       that and live by those 12 Steps. Okay, that completes the hearing.
         Here is a copy of the decision. And I personally feel like you are
20       doing quite well. The completion of the Machine Shop will definitely
         put you in good stead.
21
22  Reply, Exh. I, p. 39:5-22.

23       At the second subsequent parole suitability hearing on February 28, 2001,

24  Boatman was given a one year denial. At the end of the hearing the

25  commissioners made these comments.

26

27  _____

28  [3]   Boatman's statement of assent, "yes," deleted for clarity.

1
2
3
4
5

Presiding Commissioner Munoz: You have achieved journeyman status in your welding and machinist vocational training, and you're to be commended for all of that. However, these positive aspects of your behavior do not outweigh the factors of unsuitability. The Panel recommends that you remain disciplinary-free; and that you, if available, continue your participation in any and all self-help and therapy programming that becomes available. In particular, as you stated during your presentation, you're doing real well in your NA participation. You're doing real well, period.

6

Inmate Boatman: I appreciate that.

7
8
9

Presiding Commissioner Munoz: You made a good presentation and your attorney made a good presentation on your behalf. You're very, very close. I can't promise you you'll get one the next time you come before the Panel.

10

Inmate Boatman: Uh-huh.

11

Presiding Commissioner Munoz: But I'm very impressed with what you've done with yourself so far. And, Mr. McCormick?

12
13
14

Deputy Commissioner McCormick: I just want to go along with what Mr. Munoz said. You made a very good presentation and you're headed in the right direction. And I know that it can be disappointing to not get a date. Don't let that disappointment affect you.

15

. . . .

16

Presiding Commissioner Munoz: Your family should be proud of the way you've conducted yourself.

17
18

Reply, Exh. J, pp 52:13-54:7.

19
20

At his third subsequent hearing on July 30, 2002, Boatman was found suitable for parole by the Board. The presiding commissioner announced that the

21
22

Board panel had "reviewed all information received from the public and ...

concluded that the prisoner is suitable for parole and would not pose an

23

unreasonable risk of danger to society or a threat to public safety if released from

24

prison." Reply, Exh. K, 49:4-12.

25

The presiding commissioner summarized the reasons Boatman is suitable

26

for parole. Id. at 49-52. First, "[t]he prisoner has no juvenile record of assaulting

27

others. While imprisoned he has enhanced his ability to function within the law

28

upon release through participation in educational programs. He has acquired his

GED.  Through vocational programs, he has spent over seven thousand hours

working toward his machinist certification.  He has spent time in welding, and he

also is now enrolled in a plumbing program.  Through . . .  self-help programs

such as NA, which he's been involved in for the past nine years.  Has [sic] taken

home study courses to enhance his vocational abilities.  He participated in

Alternatives to Violence, Kairos, Alcoholics Anonymous, Katargeo, and various

other self help programs such as walkathons."  Id. at 49-50.  Second, he "has

realistic parole plans which include job offers and family support, and has

maintained close family ties while in prison via letters and visits."  Id. at 50. Third,

"he has maintained positive institutional behavior which indicates significant

improvement in self-control."  "[He] has received no 115s [4] since his

incarceration, and has received three 128(a) counseling chronos."[5]  Id.  Fourth, "he

also shows signs of remorse.  He has indicated he understands the nature and

magnitude of the crime and has taken steps toward good citizenship, and he

accepts responsibility for his criminal behavior."  Id.

Finally, psychological reports in 2000, 1998, and 1996 indicated that "the

inmate has good insight into the dynamics of his commitment offense, takes full

responsibility for his actions, and that his judgment is well above average. [The

report [g]]oes on to state that the inmate's potential for danger in the community

---

    [4]  California Department of Corrections Form 115 is a rules violation report.
See 15 Cal. Code Regs. 3312(a)(3)("When misconduct is believed to be a
violation of law or is not minor in nature, it shall be reported on a CDC Form 115
(Rev. 7/88), Rules Violation Report.").

    [5]  California Department of Corrections Form 128-A is a custodial counseling
chrono.  See 15 Cal. Code Regs. 3312(a)(2)("When similar minor misconduct
recurs after verbal counseling or if documentation of minor misconduct is needed,
a description of the misconduct and counseling provided shall be documented on a
CDC Form 128-A, Custodial Counseling Chrono.").  The reference to three
chronos is erroneous.  See Answer, ¶ 9, and Exh. 7.

1  appears to be quite minimal.  He has no history of violence prior to the

2  commitment offense.  And says this man is not a criminal and that it's very

3  unlikely he would behave violently if released." Id. at 50-51.  See Reply Exh. D

4  (psychological evaluations, 2005, 2004, 2000).

5      On December 20, 2002, the Governor reversed the decision of the Board of

6  Prison Terms.  Reply, Exh. L.  He focused primarily on the underlying

7  commitment offense, stating that "Mr. Boatman's actions demonstrate a callous

8  disregard for human life and suffering.  He stood by and watched as Mr. Sousa,

9  offering no resistance, was shot and killed." Id.  In the Governor's view,

10  Boatman's involvement "was in no way minimal." Id.    The Governor

11  recognized that Boatman "has been remorseful from the outset," but viewed the

12  murder as an escalation from Boatman's previous criminal acts.[6]  The Governor

13  also believed Boatman had not made sufficient progress in recovering from his

14  pre-commitment drug usage.

15      At the fourth subsequent parole suitability hearing, on July 16, 2003, the

16  panel found Boatman unsuitable for parole.  After reciting the events surrounding

17  the murder, Boatman's acknowledgment of a leadership role, and Boatman's prior

18  criminal record, the panel noted that "the prisoner has done a tremendous amount

19  of programming while he has been incarcerated." Reply, Exh. M, 63:11-65:23.

20      At the fifth subsequent parole suitability hearing on April 6, 2005,  the

21  Board found Boatman suitable for parole.  It recognized the severity of

22  commitment offense, but moved beyond it to the positive aspects of Boatman's

23  transformation in prison.  Reply, Exh. N.  Nonetheless, the Governor reversed the

24

25

26      [6]  The sex charge was discussed at the 2002 parole hearing.  Boatman admitted
    that he had had sex with a minor.  Reply, Exh. K; Hearing Transcript at 13-16.  It
27  is described is the 2006 Life Prisoner Evaluation Report, Answer, Exh. 3; Reply,
    Exh. G.  The police report is included in the Answer.  Answer, Exh. 6.

28  No. C-07-3412 SI (PR)
    Petitioner's Traverse and Reply to Answer                    10

1  Board on August 24, 2005.  Reply, Exh. O.  This court upheld Superior Court's

2  Decision affirming the Governor's decision on March 17, 2008.

3       IV.    The Current Decision Finding Boatman to Be A Danger to Society

4       At his sixth subsequent parole suitability hearing, which is the subject of the

5  present Petition, the Board found Boatman unsuitable.  In a break from ten years

6  of laudatory and encouraging comments by the Board, the presiding commissioner

7  gave this characterization of Boatman's commitment offense and his prior criminal

8  acts: "you were a one man crime spree."  Parole suitability was denied for at least

9  two years.  Answer, Exh. 2, 65:17-18; Reply, Exh. P, 65:17-19.

10      Simply referring "the crime," and referring to Boatman as "the person," the

11  presiding commissioner said:

12      In concluding that the person is not suitable for parole and would
        pose an unreasonable risk of danger to society or a threat to public
13      safety if released from prison.  The crime was very cruel.  The crime
        was done or planned without feeling bad about hurting others.  The
14      inmate did not care people suffered.  The reason for the crime was
        small compared to the hurt it caused.  The inmate has sexually
15      assaulted [inaudible] very much.

16      [No ¶] In a separate decision, the hearing panel finds that it is not
        reasonable to expect that parole would be granted at a hearing in the
17      following two years.

18      [No ¶] The specific reason for the findings are, that this was carried
        out in an especially cruel and callous moment.  The offense was
19      carried out in a manner which demonstrates an exceptionally callous
        disregard for human suffering.  The motive for the crime was
20      inexplicable in the relationship to the offense.  I mean this was a
        crime where he had given you [sic] the money.  You had went [sic]
21      and got the gun, put bullets in it, and drove down there.  So you knew
        that somebody had a good – somebody's going to get killed.
22      Especially when the guy made the statement, there will be no
        witnesses.  When someone asked you – hey, who's going to – what
23      about witnesses – I'm going to take care of that.  And so this man,
        even though he cooperated, he still lost his life.
24
        [No ¶]You have no record of violence or assaultive behavior.  And it
25      became an escalating pattern of criminal conduct.  Basically, you
        failed to profit from society's previous attempt to correct your
26      criminal, criminality.  Such as, you were on probation at the time of
        this – this crime occurred.  On probation.  A young lady had been
27      raped prior to that.  Somebody else had – had their purse snatched

28

1   prior to that.  And then at some point this – it was just going too far.
    It's like you were a one man crime spree.

2

3   Id. at 64:9-65:18 (paragraphs added for clarity).

4        The Fresno Superior Court was more temperate.  It found that there was

5   "some evidence" to support the decision "because of the violent nature of the

6   original offense, and the escalating pattern of petitioner's criminal conduct before

7   the murder.  The facts on the record tend to show that the underlying offense was

8   'especially heinous, atrocious, or cruel.'" Answer Exh. 9, at unnumbered p. 3.

9   Further, the Superior Court found that petitioner "had been involved in other

10  crimes before the murder, including sex with a 14 year old girl when he was 18,

11  and snatching a woman's purse."  Id. at unnumbered p. 4.

12       V.    Boatman's Expressions of Remorse

13       Boatman expressed remorse for his crime at the outset.  He did not wait

14  years, like the Petitioner in Hayward, or until it was expedient to do so.  He

15  expressed remorse to the probation officer before sentencing.  See Probation

16  Report (defendant's statement), Answer, Exh. 4 ("I sorry for this what I have done,

17  but I can't bring back the life of John Suza [sic].... So God help John and his

18  family because if it wasn't my car and my gun this would never of happened.").

19  When given the opportunity, he expressed remorse at practically every parole

20  suitability hearing.  And he expressed remorse in the course of his psychological

21  evaluations. Reply, Exh. D, p. 9 (2000 Report of Dr. Buchan,); Reply, Exh. D, p. 9

22  (2004 Report of Dr. Kornberg: "It's just very sad what happened (tearfully, with

23  his upper lip trembling)...and I'm responsible. I affected a lot of people ... they

24  didn't deserve that."); Reply, Exh. D, p. 3 (2005 Report of Dr. Wantuch: "Mr.

25  Boatman's account of the instant offense and his statements concerning his

26  responsibility and his sense of remorse were consistent with previous reports.").

27

28  No. C-07-3412 SI (PR)
    Petitioner's Traverse and Reply to Answer                    12

1    VI.    Boatman's Disciplinary Record

2        Boatman has had no major discipline since his incarceration. Unlike the

3    petitioner in Hayward, 513 F.3d at 538, he did not wait to follow the rules.  He did

4    receive a minor discipline (CDC 128) in 1993 when he tried to send his mother

5    some purple earrings.  See Answer, Exh. 7.[7]  Also, he received a minor discipline

6    (CDC 128) in 1999 for failing to stand by his bunk to be counted.  Id.

7    VII.    Petitioner's Record in Prison and His External Support System

8        Petitioner's accomplishments, which are substantial, are set out in the 2006

9    Life Prisoner Evaluation Report, the certificates he received, and in numerous

10   chronos.  Answer, Exh. 3; Reply, Exhs. C, E, F, and G.  His letters of support,

11   which are illuminating and numerous, show a loving family that is willing and

12   able to help him, a group of friends who met him through volunteer work at the

13   prison and are now coming to his aid, his NA sponsor, and prospective employers

14   who will give him employment.  See Reply, Exhs. A and B.

15   VIII.  Petitioner's Psychological Evaluations

16       In 2000,  S. Buchan, Ph.D., a clinical psychologist, evaluated Boatman. He

17   found that:

18       Potential for danger in the community, if released, appears to be quite
         minimal.  He has no history of violence prior to the instant offense.
19       He has had no difficulty relating to others and conforming to
         institutional demands in a very stressful institutional setting.  He is
20       focused, and knows himself and his needs.  He has strong family
         support.  His choices are very constructive.  Others respect him.  He
21       has clear-cut goals and a means to earn a good living.

22       ....

23       Although he did not actually do the murder, he torments himself for
         participating in a crime that became murder and for making this
24       murder possible, by supplying the car and the gun.  This is as it
         should be.

25

26

27       [7]   Boatman's mother, Aieda Boatman Tripp, is favorably described in the 2000
     Psychological Report prepared by Dr. Buchan. Reply, Exh. D, at 3.

28   No. C-07-3412 SI (PR)
     Petitioner's Traverse and Reply to Answer                              13

1
2

> Yet, this man is not a criminal. I believe it is very unlikely that Mr. Boatman would behave violently if released – that his violence potential is actually less than that of an average person.

3  Reply, Exh. D, at 9-10.

4  In 2004, J. Kornberg, M.D., Psychiatry Fellow, stated that it is impossible to

5  predict with absolute accuracy anyone's future dangerousness. Reply, Exh. D, at

6  11. However, he observed that Boatman's history "includes only distant factors

7  which may predispose him toward future dangerousness." Id. He concluded that

8  factors other than psychopathology should be considered in determining parole

9  eligibility. Id.

10  In 2005, Elizabeth Wantuch, Psy.D, evaluated Boatman because the Board

11  believed that the 2004 report was not specific enough. Reply, Exh. D, p. 1. She

12  found did not find "any factors that are unfavorable at this point in time." Further,

13  she said that "[i]t is this examiner's professional opinion that Mr. Boatman would

14  pose a low risk if he were to be released into the community at this time." Id.

15  <u>ARGUMENT</u>

16  Petitioner is entitled to relief if the denial of the writ is (1) "contrary to, or

17  involved an unreasonable application of, clearly established Federal law, as

18  determined by the Supreme Court of the United States; or (2) resulted in a decision

19  that was based on an unreasonable determination of the facts in light of the

20  evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). The

21  Fresno County Superior Court's decision is the last reasoned decision to which

22  § 2254(d) applies.

23  A.    <u>The California Parole Scheme for Indeterminate Life Prisoners</u>

24  When California prisoners are sentenced to indeterminate sentences, the

25  Board functions as the parole authority. Cal. Pen. Code § 3040. It first determines

26  suitability for parole. If it finds a prisoner suitable, it establishes a release date. If

27  the Board determines that public safety requires more confinement, parole is

28

1   denied.  The Governor may review a Board suitability decision.  Cal. Const. Art.

2   V, § 8(b).

3        California law requires that one year prior to the prisoner's minimum

4   eligible parole release date a panel of two or more commissioners or deputy

5   commissioners shall meet with the prisoner and shall normally set a parole release

6   date.  Cal. Pen. Code § 3041(a).  The panel or the Board "shall set a release date

7   unless it determines that the gravity of the current convicted offense or offenses,

8   or the timing and gravity of current or past convicted offense or offenses, is such

9   that consideration of the public safety requires a more lengthy period of

10  incarceration for this individual, and that a parole date cannot be fixed at this

11  meeting."  Cal. Pen. Code § 3041(b).  See In Re Dannenberg, 34 Cal. 4th 1061,

12  cert. denied, 546 U.S. 844 (2005); In Re Rosenkrantz, 29 Cal 4th 616 (2002), cert.

13  denied, 538 U.S. 980 (2003).

14       The Board is empowered to establish regulations to implement the statutory

15  scheme.  Cal. Pen. Code § 3052.  The regulations direct the Board to consider the

16  following information: "All relevant, reliable information available to the panel

17  shall be considered in determining suitability for parole.

18          Such information shall include the circumstances of the prisoner's
            social history; past and present mental state; past criminal history,
19          including involvement in other criminal misconduct which is reliably
            documented; the base and other commitment offenses, including
20          behavior before, during and after the crime; any conditions of
            treatment or control, including the use of special conditions under
21          which the prisoner may safely be released to the community; and any
            other information that bears on the prisoner's suitability for release.
22          Circumstances which taken alone may not firmly establish
            unsuitability for parole may contribute to a pattern which results in a
23          finding of unsuitability.

24  15 Cal. Code Regs. § 2402(b).  The regulations also direct the Board to consider

25  six nonexclusive circumstances tending to show unsuitability and nine tending to

26  show suitability.  15 Cal. Code Regs. §§ 2402(c), 2402(d).  Circumstances tending

27  to show unsuitability include that the inmate: "(1) ... committed the offense in an

28

especially heinous, atrocious or cruel manner." § 2402(c)(1). In deciding whether the crime was especially heinous, atrocious, or cruel, the Board is to consider the following factors: "(A) Multiple victims were attacked, injured or killed in the same or separate incidents. [¶] (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder. [¶] (C) The victim was abused, defiled or mutilated during or after the offense. [¶] (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering. [¶] (E) The motive for the crime is inexplicable or very trivial in relation to the offense." § 2402(c)(1)(A)-(E).

Other circumstances tending to indicate unsuitability for parole are that the prisoner possesses a previous record of violence, has an unstable social history, has previously sexually assaulted another individual in a sadistic manner, has a lengthy history of severe mental problems related to the offense, and has engaged in serious misconduct while in prison. § 2402 (c)(2)-(6).

Circumstances tending to show suitability for parole are that the inmate has no juvenile record, a stable social history, has shown signs of remorse, committed his crime as the result of significant stress in his life, committed the offense as a result of battered woman syndrome, lacks any significant history of violent crime, is of an age that reduces the probability of recidivism, has made realistic plans for release, and has engaged in institutional activities that indicate an enhanced ability to function within the law upon release. § 2402(d). The specified unsuitability and suitability factors are "general guidelines." § 2402(c).

> **B.    The California Parole Scheme Creates a Clearly Established Liberty Interest Subject to Due Process**

California prisoners serving indeterminate life terms have an expectation that they will be considered for parole release in accordance with California statutes and regulations. Hayward v. Marshall, 512 F.3d 536, 542 (9th Cir. 2008); Sass v. California Board of Prison Terms, 461 F.3d 1123, 1127-1128 (9th Cir.

2006). "[T]his liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." Id. at 1127, citing Biggs v. Terhune, 334 F.3d 910, 915 (2003). "For second degree murder, parole is the rule, not the exception." In Re Gray, 151 Cal.App.4th 379, 403 (2007) (descriptive heading: initial capitals deleted).   For AEDPA purposes, a California prisoner's protected liberty interest in a parole date is established by Supreme Court precedent. See Hayward, 513 F.3d at 542; Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006).

### C.    The Unchangeable Facts Relied on By the Parole Board to Find Christopher Boatman Unsuitable for Parole Do Not Meet Due Process Requirements

### 1.  The Underlying Offense

Christopher Boatman cannot escape the underlying offense.  It is a tragedy that will never change.  He cannot erase the criminal conduct that occurred prior to the offense.  That will never change either.  Only Boatman can change and time can pass.  Boatman's change has been substantial and exemplary over the past 22 years.

At this point, the underlying offense and the prior offenses are no longer "some evidence" that will rationally support a finding that the public safety requires that Boatman be found unsuitable for parole. See Hayward, 512 F.3d at 545 ( "a continued reliance on an unchanging factor such as the circumstances of the commitment offense, preconviction criminal history, or other past conduct, might in some cases result in a due process violation at some point."); Biggs v. Terhune, 334 F. 3d at 916 ("A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."). The Board's reliance on the commitment offense and offenses that predated it do not withstand constitutional scrutiny.  In  the

1    context of the relevant California factors, these reasons are not some evidence that

2    "the prisoner will pose an unreasonable risk of danger to society if released from

3    prison." 15 Cal. Code Regs. § 2402(a).

4            First, the underlying offense occurred 20 years before the Board's decision.

5    These facts are immutable. Boatman has worked hard to change himself. The

6    Board of Prison Terms clearly recognized the transformation. The 2002 Board

7    Decision states that

8            While imprisoned, he has enhanced his ability to function within the
        law upon release through participation in education programs. He has
9            acquired his GED. Through vocational programs, he has spent over
        seven thousand hours working toward his machinist certification. He
10           has spent time in welding, and he also is now enrolled in a plumbing
        program. Through ... self-help programs such as NA, which he's
11           been involved in for the past nine years. Has taken home study
        courses to enhance his vocational abilities. He participated in
12           Alternatives to Violence, Kairos, Alcoholics Anonymous, Katargeo,
        and various other self-help programs such as walkathons. He has
13           realistic parole plans which include job offers and family support, and
        has maintained close family ties while in prison via letters and visits.
14           He has maintained positive institutional behavior which indicates
        significant improvement in self-control.

15
        [No ¶] Mr. Boatman has received no 115's since his incarceration, and
16           he has received three 128(a) counseling chronos. He also shows
        signs of remorse. He has indicated he understands the nature and
17           magnitude of the crime and has taken steps toward good citizenship,
        and he accepts responsibility for his criminal behavior.
18
        [No ¶] The psychiatric report dated September 28th, 2000 by Dr. S.
19           Buchan ... supports parole. In that report, the doctor says – makes a
        number of positive comments, but does indicate that the inmate has
20           good insight into the dynamics of his commitment offense, takes full
        responsibility for his actions, and that his judgment is well above
21           average. Goes on to state that the inmate's potential for danger in the
        community appears to be quite minimal. He has no history of
22           violence prior to the commitment offense. And says this man is not a
        criminal and that it's very unlikely he would behave violently if
23           released.

24    Reply, Exh. K, at 92. See also, 2006 Life Prisoner Evaluation Report, Answer,

25    Exh. 3, at 3; Reply Exh. G.

26            Second, the 2006 Board exaggerated Boatman's participation in the offense.

27    The relevant California regulation states that a circumstance that tends to indicate

28

1    unsuitability includes commission of the offense in "an <u>especially</u> heinous,

2    atrocious or cruel manner."  15 Cal. Code Regs. § 2402(c)(1)(emphasis added).

3    "The factors to consider include: ... (D) The offense was carried out in a manner

4    which demonstrates an <u>exceptionally</u> callous disregard for human suffering."

5    <u>Id</u>.(emphasis added.).  Under California law, "The measure of atrociousness is not

6    general notions of common decency or social norms, for by that yardstick all

7    murders are atrocious. ... 'All second degree murders by definition involve some

8    callousness – i.e. lack of emotion or sympathy, emotional insensitivity,

9    indifference to the feelings and suffering of others.'  Rather, the inquiry is whether

10   among murders the one committed by [the inmate] was particularly heinous,

11   atrocious or cruel."  <u>In Re Gray</u>, 151 Cal.App.4th 379, 404 (2007), citing <u>In Re</u>

12   <u>Lee</u>, 146 Cal. App.4th 1400 (2006)(italics omitted).   The fact that Boatman did

13   not offer assistance to the victim does not, under California law, make the crime

14   especially callous.  <u>In Re Elkins</u>, 144 Cal.App.4th 475, 497 (2006).

15        Fairly read, the Board's decision indicates that the panel considered

16   Boatman to have been the shooter.  ("I mean this was a crime where he had given

17   <u>you</u> the money."  Answer Exh. 2, p. 64:26-65:1 (emphasis added).   Boatman was

18   not the shooter.  He was vicariously guilty under California's felony murder rule.

19   The purpose behind the felony murder rule is to deter risk-taking criminal

20   behavior that might result in death.   <u>People v. Robertson</u>, 34 Cal. 4th 156, 165

21   (2004).  Boatman's participation in the underlying robbery, supplying the gun,

22   standing as a lookout during the robbery, and driving the getaway car are not in

23   themselves especially heinous, atrocious, or cruel acts.

24        The Board's decision and the Superior Court's decision do not rely on any

25   present factors that show Boatman would be a danger to society if released.[8]  If the

26

27        [8]  Contrast the detail shown by the Governor of California when he overruled
                                                                    (continued...)

28   No. C-07-3412 SI (PR)
     Petitioner's Traverse and Reply to Answer
                                    19

1   California Legislature wanted to make punishment for second degree murder life

2   imprisonment, or 20 years to life, or 50 years to life, it could have done so.

3   Instead it made the punishment 15 years to life, with a presumption of parole

4   unless release of the inmate is presently dangerous.  Because there is not some

5   present evidence showing Boatman would be dangerous if released, the Board's

6   rationale and the Superior Court's rationale are simply an extended imposition of

7   the punishment from the minimum prescribed by the Leglislature to an indefinite

8   term that can go on forever, regardless of the efforts and practical effects of the

9   inmate's efforts toward redemption.

10          Interpreting the California parole suitability guidelines, California courts

11  have found decisions to deny parole unsupported by some evidence in cases where

12  the petitioner perpetrated the killing on facts much worse than this case.  In each

13  case, the petitioner was the actual killer and not a bystander, like Boatman.

14          In In Re Barker, 151 Cal.App.4th 346, 353-354, 372-375 (2007), Barker

15  helped his friend kill his father and grandfather.  The friend shot the father, who

16  was watching television, in the head three times and shot the mother two times.

17  The petitioner struck the grandfather on the head three or four times with a chisel

18  and then shot him in the head with a rifle.  Nonetheless, this was insufficient to

19  support a finding of unsuitability.  "Some evidence" did not support denial.

20          In In Re Elkins, 144 Cal.App. 4th at 480-481, 496-499, the petitioner had

21  been intoxicated.  With a friend he set out to rob the victim.  When the victim tried

22

23  _____

    [8] (...continued)

24  the Board in 2002 and again in 2005.  Reply, Exhs. L and O.  Although we submit

25  that the Governor's rationale was insufficient and violated due process and have
    challenged his decisions, at the very least the Governor had a rationale explaining

26  how the commitment offense and prior criminal activity related to present

27  dangerousness.  The Board and the Superior Court had none – other than recitation
    of the circumstances of the commitment offense and prior criminal acts.

28

1    to defend himself with a knife, the petitioner killed him by hitting him over the

2    head with a baseball bat.  He then dumped the body down the side of a hill.

3    "Some evidence" did not support the decision denying suitability.

4         In In Re Weider, 145 Cal.App.4th 570, 575-576 (2006), the petitioner killed

5    his victim in the course of a suicidal rage in the middle of a bar and also shot two

6    other patrons, one twice.  Weider had gone out to his truck and returned with a

7    gun.  Id. at 588-589 ("Weider's act of simply going out to his car to retrieve the

8    murder weapon does not reflect the type of heinous, atrocious, or cruel behavior

9    .... rationally indicat[ing] he will present an unreasonable public safety risk if

10   released from prison.").  "Some evidence" did not support the decision denying

11   suitability.

12        In In Re Lee, 143 Cal.App.4th 1400 (2006), the petitioner went to a

13   restaurant to collect a payment and decided he would kill the debtor if he did not

14   pay.  When the debtor indicated he would not pay, petitioner fired five times,

15   hitting the debtor twice, but also killed the debtor's wife by shooting her in the

16   head.  "Some evidence" did not support the decision denying suitability.

17        Recently in In Re Burdan, 2008 WL 757033 (Cal. Court of Appeal, March

18   24, 2008), Burdan shot his wife eight times, three to the temples, two to the neck,

19   and three to the chest.  Burdan had to cock the gun after each shot.  The 1983

20   crime itself was no longer a basis for unsuitability.

21        In each of these cases, California appellate courts have interpreted

22   California law to  require more evidence that a crime is especially heinous,

23   atrocious or cruel, or exceptionally callous, when the commitment offense itself is

24   the basis for a finding of unsuitability.  Under California law, intent to kill is not a

25   permissible factor, inasmuch as malice is one of the minimal elements of second

26   degree murder.  Burdan, 2008 WL 757033 *10.

27

28

1    Although Boatman's 2006 hearing panel did not rely on perceived lack of

2 remorse as a factor, this Court addressed this issue in the context of the 2005

3 parole reversal by the Governor. The court found that the Governor reasonably

4 believed Boatman "may not fully grasp the consequences of his action or the

5 magnitude of his role in this murder." Boatman v. Schwarzenegger, No. 06-5234

6 SI, 2008 WL 728889 *7 (N.D. Cal. 2008). The Governor was in no position in

7 2005 to assess Boatman's credibility because Boatman never had a hearing before

8 the Governor or met the Governor. Additionally, Boatman did acknowledge the

9 magnitude of the crime many years ago – at the time he pled guilty and when he

10 was interviewed by the Fresno County probation department prior to sentencing.

11 At sentencing, Boatman's attorney gave a statement of remorse. Then Boatman

12 added to it. "Yes, you know, I am sorry for what I have done, you know, and I

13 can't bring back the life of John Sousa." Answer Exh. 13, unnumbered p. 6:5-6.

14 Boatman told the parole officer, "I sorry for this what I have done, but I can't

15 bring back the life of John Suza [sic].... So God help John and his family because

16 if it wasn't my car and my gun this would never of happened."). These statements

17 made almost 22 years ago clearly acknowledge Boatman's recognition that he was

18 responsible for the death and that without his participation it would not have

19 occurred. The Court's agreement with the assessment that Boatman "failed to

20 grasp fully his role in the murder" is not supported by the record, id. at *8, and it

21 does not support the due process requirement that some evidence must show

22 Boatman to be a present threat to public safety if parole is denied.

23    Hayward advises that the prior two decisions of the Board finding that

24 Boatman is suitable for release are relevant to consideration of the present force of

25 the commitment offense. See 512 F.3d at 544 (the "considered" decisions of the

26 parole board finding Hayward suitable on prior occasions are relevant factors); id.

27 at 546 ("the Board's successive favorable views of his application for release" is a

28

1  factor showing that the commitment offense lost its force as the basis for finding

2  Hayward "an imminent danger to public safefy.").

3      Given the passage of time and Boatman's substantial rehabilitation, the

4  commitment offense is no longer "some evidence" that Boatman presently poses a

5  threat to public safety if released under parole supervision.

6      2.  Escalation of Severity and Violence

7      The Board also said Boatman was a "one man crime spree."  The Superior

8  Court accepted this argument, although it more accurately stated the facts of the

9  prior criminal conduct.  Answer, Exh. 9, at unnumbered p. 4:5-16.

10     The Board's finding as to escalation and violence is exaggerated and it is

11  also based on immutable facts that occurred twenty years before its decision.  The

12  Board decision and the Superior Court's acceptance of it are not supported by

13  some evidence.

14     First, like the commitment offense, the prior adult record is immutable and

15  will never change.  This too has lost any force showing Boatman would be a threat

16  to public safety if released at this time.  The dicta in Sass and Biggs, and the

17  holding of Hayward, addressing the diminishing weight of immutable events are

18  just as applicable here.  "It can hardly be doubted that time may attenuate the taint

19  of certain [prior] misconduct...."Hayward, 513 F.3d at 545. There is nothing in the

20  record to show that the prior adult record, spanning a two year period before

21  Boatman turned 21, bears in any way on Boatman's present suitability for parole.

22     Among the factors listed in the California regulation as tending to show

23  unsuitability,  two are relevant here.  See 15 Cal. Code Regs. § 2402(c).

24  Subsection (2) lists "Previous Record of Violence" as a factor.  This is defined as

25  having on "previous occasions inflicted or attempted to inflict serious injury on a

26  victim, particularly if the prisoner demonstrated serious assaultive behavior at an

27  early age."  Nothing in Boatman's prior record comes close to meeting this

28

1    criterion.  Subsection (4) lists "Sadistic Sexual Offenses."  This is defined as

2    having "sexually assaulted another in a manner calculated to inflict unusual pain

3    or fear upon the victim."  Nothing in Boatman's prior record fits this criterion

4    either.

5         Second, although Boatman was arrested on April 30, 1984 for two counts of

6    rape with force and fear, "the charges were reduced to illegal sexual intercourse

7    with a minor, then dismissed."  Answer, Exh. 3, p. 3 (2006 Evaluation Report).

8    Tellingly, the rape and sexual intercourse charges were not even listed by the

9    probation officer in his 1987 sentencing report to the Fresno Superior Court,

10   despite the fact that this offense occurred in Fresno County.  Answer, Exh. 4**.**  If

11   this crime was not significant enough to mention in the sentencing report, it cannot

12   serve as a basis for denying parole suitability twenty years later.[9]  The assertion

13   that the arrest shows criminality is itself flawed.  In <u>Quintero-Salazar v. Keisler</u>

14   506 F.3d 688, 692-693 (9th Cir. 2007), an immigration case, the Court of Appeals

15   recently held that California's statutory rape statute does not proscribe conduct

16   that is <u>malum</u> <u>in</u> <u>se</u>.  Statutory rape is not categorically a crime of moral turpitude.

17        Boatman's grand theft charge involved a purse snatch and possession – not

18   use – of a tire iron.  It occurred on September 21, 1984.  Answer, Exh. 3, p. 3.

19   Later on April 23, 1985, he was arrested for <u>petty</u> <u>theft</u> and required to serve two

20   days in jail, plus one year of probation.  Answer, Exh. 3, p. 3.  This chronology

21   shows a decrease in severity prior to the commitment offense.

22

23

24

25       [9]    The Warden has included a copy of the 1984 crime report with his Answer.

26   Answer, Exh. 6.  A fair reading of the report shows why the girl ultimately did not agree to testify against Boatman and also shows that the district attorneys' office

27   likely would not have obtained a conviction for sex with a minor, let alone rape.

28   The girl was trying to set up Boatman and she did not retain evidence of rape.

1    Reliance on stale events going back 20 years to a time when Boatman was

2  barely an adult is arbitrary and does not provide "some evidence" he would be a

3  present threat to public safety.

4    D.    Denial of Parole Suitability on this Record is Arbitrary

5    In Boatman v. Schwarzenegger, No. 06-5234 SI, 2008 WL 728889 this

6  court said Boatman's parole history is "rather interesting."  We submit that the

7  ping-pong, on again, off again consideration of Boatman's potential effect on

8  public safety is arbitrary.  Given the passage of time and Boatman's exemplary

9  post conviction record, due process now requires his release.  See Hayward, 513

10  F.3d at 542; Irons v. Carey, 505 F.3d 846, 851 (9th Cir. 2007).

11                      CONCLUSION

12    Christopher Boatman, like the petitioner in Hayward "has accepted

13  responsibility for his crime and does not seek to minimize its impact."  513 F.3d at

14  544.  The Board decision finding Boatman unsuitable for parole is not supported

15  by some evidence and it is arbitrary.  Because the Superior Court's adoption of

16  that decision is contrary to, or involved an unreasonable application of, clearly

17  established Federal law, as determined by the Supreme Court of the United States,

18  or resulted in a decision that was based on an unreasonable determination of the

19  facts in light of the evidence presented in the state court proceeding, the Court

20  should grant the Petition for a Writ of Habeas Corpus.

21  Dated: April 2, 2008

22

23                      Respectfully submitted,

24                          /s/

25                      Amitai Schwartz
                        Attorney for Petitioner
26

27

28  No. C-07-3412 SI (PR)
    Petitioner's Traverse and Reply to Answer            25