INDETERMINATE SENTENCE PAROLE RELEASE REVIEW
(Penal Code Section 3041.2)

CHRISTOPHER BOATMAN, D-65055
SECOND DEGREE MURDER WITH USE OF A FIREARM

NO ACTION: _____

MODIFY: _____

REVERSE: _____X_____

On May 29, 1986, Christopher Boatman had been "free-basing" cocaine all day. Out of money for more drugs, Mr. Boatman, Harold Jones, Roland Montgomery and Chris Besel discussed robbing a store. Mr. Jones showed the group a .22 caliber revolver, provided by Mr. Boatman for use in the robbery. Mr. Besel expressed apprehension; Mr. Jones threatened that he would tell the police that Mr. Besel was the ringleader if he told anyone about the group's discussion. Mr. Besel then asked about using masks, saying to them, "You know you're going to get caught, he's going to see your face." Mr. Jones told the group, "We're not going to worry about that."

Mr. Boatman, Mr. Jones and Mr. Montgomery drove to the Highway 41 Market in Fresno County. The original plan was for Mr. Boatman to be the "get-away" driver, with Mr. Montgomery remaining in the car, and Mr. Jones entering and robbing the store. However, believing that Mr. Jones would not share the proceeds from the robbery, Mr. Boatman asked Mr. Montgomery to drive his car while he took the position of "lookout" within the store. As Mr. Boatman stood lookout, Mr. Jones confronted the store clerk, 19-year-old John Sousa, with the gun, and demanded money. Mr. Sousa gave Mr. Jones $100, and as he turned away, Mr. Jones shot him in the back of the neck. With Mr. Boatman driving, the three men fled the scene. After dropping his crime partners off, Mr. Boatman returned home, where he slashed his own tires to appear that his car was incapacitated at the time the robbery had taken place.

A customer found Mr. Sousa on the floor behind the counter, bleeding from his mouth. Mr. Sousa later died at a local hospital as a result of a single gunshot wound to the back of his neck.

An anonymous tip led the police to Mr. Boatman and his crime partners. He pled guilty to second-degree murder and was sentenced to prison for 15 years to life. A one-year enhancement was added to his sentence for his vicarious use of the firearm. Mr. Boatman's total sentence was 16 years to life.

Mr. Boatman's actions demonstrate a callous disregard for human life and suffering. He stood by and watched as Mr. Sousa, offering no resistance, was shot and killed. Indeed, the facts could support a more serious charge of first-degree murder under the felony-murder rule. (Mr. Jones was found guilty of first degree murder with special circumstances and sentenced to life in prison without the possibility of parole.) Mr. Boatman's involvement in Mr. Sousa's death was in no way minimal. He provided the loaded gun and the get-away car.

Although Mr. Boatman has been remorseful from the outset, the murder was not an isolated incident, but rather an escalation in severity and violence from his previous criminal acts. As an adult, Mr. Boatman was arrested twice for Petty Theft, and for two counts of Rape with Force and Fear. More importantly, Mr. Boatman squandered his prior opportunities at rehabilitation. He was on probation for convictions of Grand Theft and Possession of a Weapon, when he committed the life offense.

Mr. Boatman has a serious history of alcohol and drug abuse. He began smoking marijuana and drinking alcohol at the age of 14. He admits "free-basing" cocaine all day prior to the life offense. Indeed, Mr. Boatman admitted committing the robbery to fund his drug habit. Although his evaluations in many ways support release, his alcohol abuse problem presents a significant risk factor as a precursor to violence. I am concerned that a return to alcohol abuse in a less controlled setting would result in the deterioration of his judgment and lead to his inability to control himself and his violent propensities. Although Mr. Boatman has established adequate parole plans, his participation in substance abuse counseling while incarcerated has not been sufficiently long-term. Extended incarceration with further participation in substance abuse programs would be beneficial to solidify and maintain his gains.

In reviewing the record, there are indications that Mr. Boatman has made significant progress while incarcerated. Not only has he obtained both his GED and high school diploma, but has also taken advantage of self-help and substance

abuse programs available to him. Moreover, Mr. Boatman has sought vocational training, including becoming a Journeyman Machinist. However, the factors suggesting that Mr. Boatman would pose an unreasonable danger if released from prison outweigh the factors supporting suitability at this time.

After reviewing the factors discussed above, I believe Mr. Boatman still poses an unreasonable risk of danger to society. Indeed, any of the negative factors, standing alone, would lead to a finding that Mr. Boatman is unsuitable for release on parole.

Accordingly, I REVERSE the Board of Prison Terms' decision to parole Mr. Boatman.

Decision Date 12/20/02

GRAY DAVIS
Governor