SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PRISON TERMS

In the matter of the Life )
Term Parole Consideration )
Hearing of: )
                                )
CHRISTOPHER BOATMAN )
_____)

CDC Number D-65055



CALIFORNIA STATE PRISON, SAN QUENTIN

SAN QUENTIN, CALIFORNIA

JULY 16, 2003

10:47 A.M.

PANEL PRESENT:

CAROL DALY, Presiding Commissioner
R. RODRIGUEZ, Deputy Commissioner

OTHERS PRESENT:

CHRISTOPHER BOATMAN, Inmate
ALAN SILVER, Attorney for Inmate

CORRECTIONS TO THE DECISION HAVE BEEN MADE

_____ No          See Review of Hearing
   √    Yes         Transcript Memorandum

**Debra M. Sevey, Capitol Electronic Reporting**

ii

## INDEX

                                                            Page

Proceedings........................................  1

Case Factors.......................................  7

Pre-Commitment Factors............................ 14

Post-Commitment Factors........................... 22

Parole Plans...................................... 40

Closing Statements................................ 57

Recess............................................ 61

Decision.......................................... 62

Adjournment....................................... 67

Transcriber Certification......................... 68

--oOo--

1

# P R O C E E D I N G S

1

2       **PRESIDING COMMISSIONER DALY:**  This is a

3   Subsequent Parole Consideration Hearing for

4   Christopher Boatman, CDC Number D65055.  The date

5   of the hearing is 7/16 of '03, and we're located at

6   San Quentin State Prison, and it is 10:47 a.m.

7   Date received was 9/3 of 1987.  Life term starts

8   9/3 of 1987 out of the County of Fresno, murder in

9   the second degree with use of a firearm, Case

10  Number FRE351031-0.  This is one count of

11  187/12022(A) of the Penal Code.  Terms were 16

12  years to life with a minimum eligible parole date

13  of 1/31 of 1997.  This hearing is going to be tape-

14  recorded.  For the purposes of voice identification

15  we will go around the room to my right.  Each

16  person will state their name, spell the last name,

17  and then when it comes to you, Mr. Boatman, give

18  your CDC number following.  Okay?

19      **INMATE BOATMAN:**  Okay.

20      **PRESIDING COMMISSIONER DALY:**  All right.

21  Carol Daly, D-A-L-Y, Commissioner, Board of Prison

22  Terms.

23      **DEPUTY COMMISSIONER RODRIGUEZ:**  Deputy

24  Commissioner Rodriguez, R-O-D-R-I-G-U-E-Z, Board of

25  Prison Terms.

26      **ATTORNEY SILVER:**  Alan Silver, S-I-L-V-E-R,

27  attorney for Mr. Boatman.

2

1      INMATE BOATMAN:  Christopher Boatman,

2   D-65055, B-O-A-T-M-A-N.

3      PRESIDING COMMISSIONER DALY:  Okay.  Let

4   the record reflect we have two correctional peace

5   officers in the room for security purposes only.

6   Mr. Boatman, on April 21st of this year you signed

7   Board of Prison Term Form 1073.  This was a form

8   asking you if you had a disability as defined under

9   the Americans With Disabilities Act, and you

10  indicated that you did not have.  Is that still a

11  true assessment of your medical status?

12     INMATE BOATMAN:  Yes, that's true.

13     PRESIDING COMMISSIONER DALY:  And I have

14  just some questions of clarification that I wanted

15  to ask you.  Did you have any trouble walking or

16  getting to the hearing room today?

17     INMATE BOATMAN:  No, I didn't.

18     PRESIDING COMMISSIONER DALY:  So, you

19  didn't need any assistance?

20     INMATE BOATMAN:  No.

21     PRESIDING COMMISSIONER DALY:  And I see

22  that you're not wearing glasses, but do you use

23  glasses for reading or anything?

24     INMATE BOATMAN:  No, I don't.

25     PRESIDING COMMISSIONER DALY:  Okay.  So you

26  didn't have any difficulty reading and preparing

27  for the hearing today?

3

1              **INMATE BOATMAN:**  No.

2              **PRESIDING COMMISSIONER DALY:**  And do you

3    have any hearing problems?

4              **INMATE BOATMAN:**  No, I don't.

5              **PRESIDING COMMISSIONER DALY:**  Did you --

6    Have you ever been a part of the CCCMS or EOP

7    programs while you have been in prison?

8              **INMATE BOATMAN:**  No, I haven't.

9              **PRESIDING COMMISSIONER DALY:**  And have you

10   ever been on psychotropic medications?

11             **INMATE BOATMAN:**  No.

12             **PRESIDING COMMISSIONER DALY:**  Okay.  And

13   did you ever have to take special education classes

14   while you were growing up?

15             **INMATE BOATMAN:**  No, I haven't.

16             **PRESIDING COMMISSIONER DALY:**  Okay.  And I

17   noticed in the Board report that your counselor

18   says that there were no accommodations necessary

19   for the purpose of effective communication

20   (inaudible) Armstrong Remedial Plan.  Commissioner

21   Rodriguez, are you prepared to proceed?

22             **DEPUTY COMMISSIONER RODRIGUEZ:**  Yes, I am.

23             **PRESIDING COMMISSIONER DALY:**  And

24   counselor, do you feel your client's ADA right's

25   have been met?

26             **ATTORNEY SILVER:**  Yes.

27             **PRESIDING COMMISSIONER DALY:**  Okay.  The

4

1   purpose of today's hearing is to once again

2   consider your suitability for parole.  And so in

3   doing that, we will consider the commitment

4   offense, your prior criminality and your social

5   history as well as your behavior and your overall

6   programming.  Now, this hearing is being conducted

7   pursuant to Penal Code Sections 3041 and 3042 and

8   the regulations of the Board of Prison Terms

9   governing parole consideration hearings for life

10  prisoners.  Now, we have reviewed the files and

11  your prior transcripts, and you will have an

12  opportunity to make any corrections or

13  clarifications if you need to.

14          INMATE BOATMAN:  Okay.

15          PRESIDING COMMISSIONER DALY:  We will be

16  discussing the facts of the crime, your criminal

17  history, your social history, and then we will go

18  directly to your progress since your last hearing,

19  and referring to any new psychiatric reports or any

20  other information that might have a bearing on your

21  suitability for parole.  And if there are any

22  additional parole plans, they need to be brought to

23  our attention.  Now, both of the Panel Members will

24  participate in the discussion here today because we

25  want to fully explore your culpability and other

26  factors bearing on your suitability.  Once we have

27  asked our questions, we will then go to your

5

1    attorney who will be allowed to ask questions, and

2    once all of the questions are answered, then we

3    will go to a closing statement by your attorney and

4    by yourself.   The -- You will be able to tell us

5    why you feel that you're suitable for parole.

6              **INMATE BOATMAN:**   Okay.

7              **PRESIDING COMMISSIONER DALY:**   Okay.   After

8    this is done, we'll recess for deliberations.   Once

9    we have arrived at a decision, we will resume the

10   hearing and announce our decision.   Now, if we find

11   that you are suitable for parole, the specific

12   length of your confinement and the factors leading

13   to our determination will be explained to you.

14   Now, the law requires that if we determine your

15   release on parole would pose an unreasonable risk

16   of danger to others you cannot be released.   And

17   the Board of Prison Term rules state that you must

18   be denied a parole date if we determine that your

19   release would parole -- would pose a danger to

20   others.   Do you understand that?

21             **INMATE BOATMAN:**   Yes, I do.

22             **PRESIDING COMMISSIONER DALY:**   Okay.   You do

23   have certain rights.   One of the rights that you

24   have is a right to a fair and impartial panel.

25   Looking at the Panel seated before you today, do

26   you have any objection to either member?

27             **INMATE BOATMAN:**   No, I don't.

6

1        **PRESIDING COMMISSIONER DALY:**  Okay.  And

2    counsel, do you feel that your client's rights have

3    been met thus far?

4        **ATTORNEY SILVER:**  Yes.

5        **PRESIDING COMMISSIONER DALY:**  You will

6    receive a copy of our tentative written decision

7    today, and the decision becomes effective once it

8    has been reviewed by our Decision Review Unit.

9        **INMATE BOATMAN:**  Okay.

10       **PRESIDING COMMISSIONER DALY:**  Once they

11   have reviewed it, they will send you a copy of -- a

12   transcript of the hearing and a copy of the

13   decision.  Once you've received that, you will have

14   90 days to file an appeal, if you so wish.  Now,

15   you are not required to discuss the matter with the

16   Panel, nor are you required to admit to the

17   offense.  However, this Panel does accept as true

18   the findings of the court.  Do you understand what

19   that means?

20       **INMATE BOATMAN:**  Yes, I do.

21       **PRESIDING COMMISSIONER DALY:**  Okay.  Do we

22   have any confidential information to be used today?

23       **DEPUTY COMMISSIONER RODRIGUEZ:**  There will

24   be none considered in today's hearing.

25       **PRESIDING COMMISSIONER DALY:**  Okay.

26   Counsel, I have a checklist, if you want to take a

27   look at it and see if we're all working off the

7

1    same set of documents.

2        ATTORNEY SILVER:  Yes, I think I have these

3    documents.

4        PRESIDING COMMISSIONER DALY:  Okay.  And do

5    you have any preliminary objections then?

6        ATTORNEY SILVER:  No, I do not.

7        PRESIDING COMMISSIONER DALY:  Okay.

8    Mr. Boatman, will you be speaking with us?

9        INMATE BOATMAN:  Yes, I will.

10       PRESIDING COMMISSIONER DALY:  Okay.  You

11   want to raise your right hand so I can swear you

12   in.  Do you solemnly swear or affirm the testimony

13   you give at the hearing today will be the truth,

14   the whole truth and nothing but the truth?

15       INMATE BOATMAN:  I do.

16       PRESIDING COMMISSIONER DALY:  Okay.

17   Counsel, if you have no objections, I'm going to

18   incorporate by reference the Statement of Facts as

19   it was taken from the June 18, 1996 transcript,

20   pages five through six.

21       ATTORNEY SILVER:  Thank you.

22       PRESIDING COMMISSIONER DALY:  And that was

23   your initial consideration -- parole consideration

24   hearing, Mr. Boatman, that was done at that time.

25   And the commitment offense was that you, along with

26   two other partners, started out to look for

27   different places to rob --

8

```
1          INMATE BOATMAN:  Yes.

2          PRESIDING COMMISSIONER DALY:  -- to support

3    your drug habit, is that correct?

4          INMATE BOATMAN:  Yes, that is.

5          PRESIDING COMMISSIONER DALY:  And as a

6    result of going to different places, you ended up

7    to the victim's station.  You entered the market

8    with your co-partner --

9          INMATE BOATMAN:  Yes.

10         PRESIDING COMMISSIONER DALY:  -- with your

11   crime partner, and the crime partner was the one

12   who had the gun, and he robbed the victim.

13         INMATE BOATMAN:  Yes.

14         PRESIDING COMMISSIONER DALY:  And then

15   ended up shooting him and killing him.  Is that an

16   accurate reflection of what happened?

17         INMATE BOATMAN:  Yes, it is.

18         PRESIDING COMMISSIONER DALY:  And I know

19   that this is actually the (inaudible) time that you

20   have been before the Parole Board.  You were before

21   the Parole Board on July 30th of last year, at

22   which time parole was granted, and then in December

23   it was reversed by the Governor.

24         INMATE BOATMAN:  That's true.

25         PRESIDING COMMISSIONER DALY:  Is there

26   anything about the commitment offense or things

27   that happened leading up to the offense that you
```

9

1 did not have a chance to explain in previous

2 hearings that you think is important for this Panel

3 to know?

4 **INMATE BOATMAN:** Previously it was stated

5 that I was like in the store and everything at the

6 time that the robbery was occurring. What happened

7 is that when (inaudible) he pulled out the gun and

8 he said, don't move, and then at that time I wasn't

9 like in the store. I was outside of the store. I

10 just wanted to clear that up.

11 **PRESIDING COMMISSIONER DALY:** You were

12 outside of the store --

13 **INMATE BOATMAN:** Yes.

14 **PRESIDING COMMISSIONER DALY:** -- at the

15 time the shooting occurred?

16 **INMATE BOATMAN:** Yes.

17 **PRESIDING COMMISSIONER DALY:** Okay. But

18 you heard the interaction between your crime

19 partner and the victim?

20 **INMATE BOATMAN:** When I got to the door, I

21 heard the first -- yes, what he had said.

22 **PRESIDING COMMISSIONER DALY:** Okay.

23 **INMATE BOATMAN:** Don't move.

24 **PRESIDING COMMISSIONER DALY:** All right.

25 And then you heard the shot.

26 **INMATE BOATMAN:** Yes, I did.

27 **PRESIDING COMMISSIONER DALY:** Okay. And

10

1  this was, in fact, your gun or belonged to --

2      **INMATE BOATMAN:** That was my stepmother's

3  gun.

4      **PRESIDING COMMISSIONER DALY:** Your

5  stepmother's gun?

6      **INMATE BOATMAN:** Yes, it was.

7      **PRESIDING COMMISSIONER DALY:** Okay. And

8  you had gone to the residence that night and

9  retrieved the gun for the purposes of using it at

10 the robbery?

11     **INMATE BOATMAN:** Yes, I did.

12     **PRESIDING COMMISSIONER DALY:** Had you ever

13 used it in any other crimes?

14     **INMATE BOATMAN:** No, I hadn't.

15     **PRESIDING COMMISSIONER DALY:** Okay. Then

16 after the shooting, what happened?

17     **INMATE BOATMAN:** Well, after the shooting,

18 I -- my other crime partner took off in the car,

19 and then we switched as we were going down the

20 road. And --

21     **PRESIDING COMMISSIONER DALY:** Switched?

22 You mean --

23     **INMATE BOATMAN:** The car was kind of like

24 stuttering. It wasn't -- We had (inaudible) pumped

25 the gas. So, I switched with him and I drove about

26 a mile down the road, and then I went to my house.

27 I dropped him off first, and I went to my house,

11

1   and I put some holes in my tire to act like my car

2   wasn't -- you know, it was disabled, it wasn't

3   running. And then I put the gun back, and I went

4   over to the house.

5       **PRESIDING COMMISSIONER DALY:** Okay. So,

6   you covered up the crime?

7       **INMATE BOATMAN:** Yes.

8       **PRESIDING COMMISSIONER DALY:** And putting

9   the gun back. Did you have to load the gun when

10  you retrieved it?

11      **INMATE BOATMAN:** No.

12      **PRESIDING COMMISSIONER DALY:** Was it

13  already loaded?

14      **INMATE BOATMAN:** The gun was loaded

15  already.

16      **PRESIDING COMMISSIONER DALY:** Okay. And

17  did you know it was?

18      **INMATE BOATMAN:** Yes, I did.

19      **PRESIDING COMMISSIONER DALY:** Okay. And

20  how did you know that?

21      **INMATE BOATMAN:** I looked at it, and I seen

22  it.

23      **PRESIDING COMMISSIONER DALY:** Okay. So,

24  you left with the gun knowing it was loaded and

25  that it would be considered a dangerous weapon --

26      **INMATE BOATMAN:** Exactly.

27      **PRESIDING COMMISSIONER DALY:** -- and that

12

1    it was going to be pointed at somebody to commit a

2    robbery.

3             INMATE BOATMAN:   True.

4             PRESIDING COMMISSIONER DALY:   Okay.   And in

5    fact you went by a couple of other places in trying

6    to seek out a place to do a robbery, because some

7    of the other places had too many witnesses, and you

8    might have had problems.

9             INMATE BOATMAN:   Yes.

10            PRESIDING COMMISSIONER DALY:   Okay.   And

11   how was this particular victim picked out?

12            INMATE BOATMAN:   The store was -- It wasn't

13   where too many people were at.   It was like it was

14   really isolated store.   Nobody was around like

15   within a quarter of a mile or so.   And we had sat

16   there and watched and seen if anybody was going in

17   and out from a friends house, and that's what we

18   decided to do was rob that store.

19            PRESIDING COMMISSIONER DALY:   Okay.   So, it

20   was very -- very planned, very premeditated, and

21   you knew that you had a dangerous weapon with you.

22   Did you have any indication that your crime partner

23   was going to, in fact, shoot and kill the victim?

24            INMATE BOATMAN:   No, I did not.

25            PRESIDING COMMISSIONER DALY:   Was it ever

26   discussed?

27            INMATE BOATMAN:   No, it wasn't.

13

1          **PRESIDING COMMISSIONER DALY:**  And so what
2    was the purpose of having the gun then?
3          **INMATE BOATMAN:**  Well, it was the purpose
4    because he had -- Mr. Jones had a shotgun and it
5    was too big, so I had offered to sneak out my
6    stepmom's gun, and that he said that he could hide
7    it better.  And that was the purpose (inaudible).
8          **PRESIDING COMMISSIONER DALY:**  Tell me how
9    you feel about having committed this crime.
10         **INMATE BOATMAN:**  I don't feel good about it
11   at all.
12         **PRESIDING COMMISSIONER DALY:**  Okay.  Did
13   you know Mr. Sousa?
14         **INMATE BOATMAN:**  No, I did not.
15         **PRESIDING COMMISSIONER DALY:**  Okay.  And so
16   he was selected -- He was a stranger, so he was
17   selected because it was an isolated area and there
18   was nobody else around?
19         **INMATE BOATMAN:**  Yes.
20         **PRESIDING COMMISSIONER DALY:**  And so you
21   did not know him at all.
22         **INMATE BOATMAN:**  No, I did not.
23         **PRESIDING COMMISSIONER DALY:**  What about
24   the family?  Did you ever come to know any of his
25   family?
26         **INMATE BOATMAN:**  No, I haven't.
27         **PRESIDING COMMISSIONER DALY:**  Okay.  What

14

1   do you think the impact of this crime has had on

2   Mr. Sousa's family?

3         **INMATE BOATMAN:**  It's had a lot of impact

4   on it.  I just -- I destroyed their lives.  And I

5   brought to the lives of his family and friends.

6   That's not right.  They didn't deserve that.

7         **PRESIDING COMMISSIONER DALY:**  Okay.  How

8   long had you been using drugs prior to this

9   occurring?

10        **INMATE BOATMAN:**  I started using crack

11   cocaine in January of '86, and before that I was

12   using a little marijuana.  I was on and off.  I

13   tried it at the age of 14, and then it escalated

14   somewhere around 18 years old that I was using

15   marijuana on a daily basis.

16        **PRESIDING COMMISSIONER DALY:**  Okay.

17   Alcohol?

18        **INMATE BOATMAN:**  No, alcohol I had tried,

19   but it was something that I wasn't using.

20        **PRESIDING COMMISSIONER DALY:**  Okay.  You --

21   As a juvenile you didn't have any record -- any

22   criminal record, is that correct?

23        **INMATE BOATMAN:**  Yes, that's true.

24        **PRESIDING COMMISSIONER DALY:**  Okay.  And

25   your adult convictions, and they're pretty well

26   spelled out in the Board report, in 1984, April of

27   '84 you were arrested by Fresno County Sheriff's

15

1   Office for two counts of rape with force and fear.

2   And then we know that the -- the court appearance

3   was delayed because the victim was uncooperative.

4   And then on September 21st of '84 you were arrested

5   in San Luis Obispo for grand theft and possession

6   of a weapon.  What was that about?

7          INMATE BOATMAN:  A purse snatching that I

8   done.

9          PRESIDING COMMISSIONER DALY:  And why did

10  you steal a purse?

11         INMATE BOATMAN:  Well, my -- There is

12  really no excuses that I could make for that,

13  because my car was broke down but I could have went

14  about other ways to get some money, just calling my

15  parents up, but --

16         PRESIDING COMMISSIONER DALY:  Okay.  So,

17  your purpose for committing the purse snatch was

18  just to gain money?

19         INMATE BOATMAN:  Yes.

20         PRESIDING COMMISSIONER DALY:  Okay.  And

21  having possession of the tire iron, was it used as

22  a weapon of threat?

23         INMATE BOATMAN:  No, it was not, and I'd

24  like to clarify that up.

25         PRESIDING COMMISSIONER DALY:  Okay.

26         INMATE BOATMAN:  Because I didn't have a

27  tire iron on me at the time, and I wasn't arrested

16

1 with one, but I did plead guilty to that.

2 **PRESIDING COMMISSIONER DALY:** For what

3 reason?

4 **INMATE BOATMAN:** I wanted to get out of

5 jail. They give me six months, and they said if I

6 plead guilty to this that I would get out of jail

7 after serving that amount of time.

8 **PRESIDING COMMISSIONER DALY:** Okay. So,

9 you were sentenced on December 19th of '84, six

10 months in jail and three years probation with the

11 condition that you were not to be in possession of

12 a weapon.

13 **INMATE BOATMAN:** That's true.

14 **PRESIDING COMMISSIONER DALY:** And then you

15 were ordered to pay a 75 dollar fine and 126 in

16 restitution. Did you pay your restitution?

17 **INMATE BOATMAN:** Yes, I did.

18 **PRESIDING COMMISSIONER DALY:** Okay. Then

19 you were transported back to Fresno upon completion

20 of that six months sentence to face your charges

21 for the rape, and then you were released when the

22 charges were reduced to illegal sexual intercourse.

23 And the victim was 14 years old. How long had you

24 known the victim?

25 **INMATE BOATMAN:** I had known the victim for

26 about a year --

27 **PRESIDING COMMISSIONER DALY:** And you had

17

1    had --

2          **INMATE BOATMAN:** -- or so.

3          **PRESIDING COMMISSIONER DALY:** -- unlawful

4    sexual relations with her --

5          **INMATE BOATMAN:** Yes, we did.

6          **PRESIDING COMMISSIONER DALY:** -- during

7    that time?

8          **INMATE BOATMAN:** Yes.

9          **PRESIDING COMMISSIONER DALY:** Okay. And I

10   understand, then, that she was confronted by a

11   truant officer, and indicated that she had been

12   raped by you.

13         **INMATE BOATMAN:** Yes.

14         **PRESIDING COMMISSIONER DALY:** Then you

15   completed your probation. You reported regularly.

16   Then you were arrested again by Fresno for petty

17   theft. What was that one about?

18         **INMATE BOATMAN:** I stole some cassette

19   tapes in the store.

20         **PRESIDING COMMISSIONER DALY:** Okay. And

21   what was your reason for stealing them? I mean,

22   here you've already been in trouble a couple of

23   times, and you knew that you were, you know -- When

24   you stole the tapes you knew it was a wrong act?

25         **INMATE BOATMAN:** Yes.

26         **PRESIDING COMMISSIONER DALY:** Okay. And so

27   why did you go ahead and do it knowing that you had

18

1    already been in jail, you'd been on probation, you

2    had had some pretty serious charges.

3         **INMATE BOATMAN:** Exactly. That's true.  I

4    was -- At that time of my life it was a very

5    stressful time, and I really didn't care anymore

6    after the separation of my parents, you know.  And

7    it really hurt me being away from them.

8         **PRESIDING COMMISSIONER DALY:** Okay.  How

9    old were you at that time?

10        **INMATE BOATMAN:** I was like 18.  Well, the

11   first one was at 18 years old.  When I was arrested

12   for the first petty theft I was 18, and the second

13   one was -- I think I was 19.

14        **PRESIDING COMMISSIONER DALY:** And were you

15   living at home during that time?

16        **INMATE BOATMAN:** I was living with my mom

17   in --

18        **PRESIDING COMMISSIONER DALY:** Okay.

19        **INMATE BOATMAN:** -- Fresno (inaudible).

20        **PRESIDING COMMISSIONER DALY:** All right.

21   And then you were sentenced to 60 days in jail.

22   You got 58 days suspended and one year probation.

23   So, you were on probation at the time that this

24   crime was committed?

25        **INMATE BOATMAN:** Yes, I was.

26        **PRESIDING COMMISSIONER DALY:** Okay.

27   Anything else about your criminal history?  Were

19

1    there other thefts and things that you were

2    involved in that you did not get caught for?

3              **INMATE BOATMAN:** No, that was it.

4              **PRESIDING COMMISSIONER DALY:** You got

5    caught every time?

6              **INMATE BOATMAN:** I got caught every time.

7    There was -- I have been in trouble four times, and

8    two petty thefts, the grand theft and the rape.

9    That was the only time that I ever done anything

10   like that.

11             **PRESIDING COMMISSIONER DALY:** Yes.

12             **INMATE BOATMAN:** And I got caught, yes.

13             **PRESIDING COMMISSIONER DALY:** And you are

14   the fourth of six children, and your father did die

15   when you were about two years old. And then she

16   married Mr. Boatman. And your mother worked as a

17   teacher's aid. But then about 10 years old your

18   parents divorced. What kind of relationship did

19   you have with your stepfather?

20             **INMATE BOATMAN:** I had -- Well, that's Jim

21   Boatman. I consider him my real father.

22             **PRESIDING COMMISSIONER DALY:** Okay. But in

23   actuality he's your stepfather, right?

24             **INMATE BOATMAN:** Yes.

25             **PRESIDING COMMISSIONER DALY:** Okay.

26             **INMATE BOATMAN:** Exactly. I had a good

27   relationship with him. We were the closest of all

20

1  our siblings, my brothers and sisters. And we did

2  everything together. We went and we did all the

3  farm work. We did the drilling the wells and the

4  milking the cows. And we fished together and

5  everything.

6      **PRESIDING COMMISSIONER DALY:** Okay. And

7  then when you moved to live with your mother, your

8  stepfather was running a liquor store, and you

9  worked for him in the liquor store at times?

10      **INMATE BOATMAN:** Yes, I did. That's when

11  my mother married again.

12      **PRESIDING COMMISSIONER DALY:** Okay.

13      **INMATE BOATMAN:** That's my other

14  stepfather, and I had worked for him, yes, in his

15  liquor store.

16      **PRESIDING COMMISSIONER DALY:** Okay. And so

17  you had pot smoking, and then your crack and

18  alcohol.

19      **INMATE BOATMAN:** Yes.

20      **PRESIDING COMMISSIONER DALY:** What's your

21  relationship with your family at this time?

22      **INMATE BOATMAN:** It's very strong.

23  Stronger than it ever has been. And as a matter of

24  fact, I'll get a visit from my brother tomorrow.

25  He lives in Texas. It's the younger brother under

26  me, Ontre, and I'll get a visit from him and my

27  sister-in-law. And I stay in close contact with

1   them every day, as much as I can, and I'll be

2   seeing my mom in a couple weeks too.  So, they're

3   there for me, and they have always been.  It's real

4   good.

5          **PRESIDING COMMISSIONER DALY:**  And your

6   mother lives where?

7          **INMATE BOATMAN:**  My mother is with my

8   father.  They've gotten back together around -- a

9   little over 10 years ago now.  And they're in

10  (inaudible) California.

11         **PRESIDING COMMISSIONER DALY:**  Okay.  Is

12  there anything else about your social factors, the

13  commitment offense or your criminal record that we

14  haven't covered?  And I know a lot of it has been

15  covered in the previous hearings.

16         **INMATE BOATMAN:**  Yes.

17         **PRESIDING COMMISSIONER DALY:**  But is there

18  anything else that you think is important to put on

19  the record?

20         **INMATE BOATMAN:**  I think that at the time

21  that I wasn't a really bad kid.  I was a good kid

22  raised by loving parents.  It's just that time was

23  really hard for me, and I just didn't care anymore.

24  I gave up all my goals and my dreams.  And it was

25  just -- It was really difficult, but I'm just sorry

26  for what I've done.  There is no excuses that I can

27  make with what I done.  I know it was wrong, and I

22

1   put a lot of people through a lot of pain, and I'm

2   sorry for that, and it won't happen again.

3       **PRESIDING COMMISSIONER DALY:**  Okay.  Let's

4   go to post-conviction factors.

5       **DEPUTY COMMISSIONER RODRIGUEZ:**  Okay.  Good

6   morning, Mr. Boatman.

7       **INMATE BOATMAN:**  Good morning.

8       **DEPUTY COMMISSIONER RODRIGUEZ:**  During this

9   portion of the hearing I'll be addressing what

10  you've done since your last Board appearance, which

11  will then bring us to the present.  In preparation

12  for this I've reviewed your Central File.  If there

13  is anything that I leave out during the portion of

14  this reading, either you or your attorney can

15  address one of them.  All right?

16      **INMATE BOATMAN:**  Okay.

17      **DEPUTY COMMISSIONER RODRIGUEZ:**  Do you have

18  any additional documents you want to present?

19      **INMATE BOATMAN:**  Yeah, I have -- I have

20  some support letters.

21      **DEPUTY COMMISSIONER RODRIGUEZ:**  Good.

22      **INMATE BOATMAN:**  Do you have all the ones

23  that I have?

24      **DEPUTY COMMISSIONER RODRIGUEZ:**  Well, I

25  don't have any from your parents.

26      **INMATE BOATMAN:**  Okay.  Yeah, they're right

27  here.

23

1           **DEPUTY COMMISSIONER RODRIGUEZ:** Okay.

2           **INMATE BOATMAN:** And I have also some

3   chronos that when I reviewed my C-File they weren't

4   in there from another program that I've been

5   involved with. And there is a couple from a couple

6   of officers that have written.

7           **DEPUTY COMMISSIONER RODRIGUEZ:** Okay.

8           **INMATE BOATMAN:** Yeah, I have that one in

9   there.

10          **DEPUTY COMMISSIONER RODRIGUEZ:** All right.

11  I'll read these at the appropriate time.

12          **INMATE BOATMAN:** All right. Thanks.

13          **DEPUTY COMMISSIONER RODRIGUEZ:** Okay. Your

14  last Board appearance was conducted here at San

15  Quentin State Prison on July 30, 2002. At that

16  time you were granted a parole date noting that

17  inmate not to be released until Governor's review.

18  There was a Governor's review by Governor Davis on

19  12/20/2002, that's December 20, 2002, at which time

20  he reversed the Board's decision.

21          **INMATE BOATMAN:** Yes.

22          **DEPUTY COMMISSIONER RODRIGUEZ:** Your

23  current classification score is zero, and you're

24  aware that -- And I was seeing you go to annual

25  committee in September. So, in September you're

26  aware that they'll change your placement score to

27  19 points?

24

1          **INMATE BOATMAN:** Oh, yeah.

2          **DEPUTY COMMISSIONER RODRIGUEZ:** You're

3    aware of that?

4          **INMATE BOATMAN:** Yeah, I'm aware of that.

5          **DEPUTY COMMISSIONER RODRIGUEZ:** Okay. And

6    when that happens, you're aware, and I do want this

7    on record, that is not adverse to you. The 19

8    points, basically, is to make that consistent with

9    your level of housing. Currently, your

10   classification score is zero, and you're currently

11   in a level two housing with a life override.

12         **INMATE BOATMAN:** Yeah.

13         **DEPUTY COMMISSIONER RODRIGUEZ:** But when

14   you go to annual committee, just like all inmates,

15   when they go to annual committee they will change

16   your new score.

17         **INMATE BOATMAN:** Oh, okay.

18         **DEPUTY COMMISSIONER RODRIGUEZ:** And the

19   lowest you can ever have is 19 points. Your points

20   can go up, but they can't go below 19.

21         **INMATE BOATMAN:** Nineteen.

22         **DEPUTY COMMISSIONER RODRIGUEZ:** And, again,

23   for the record, that is not adverse action.

24         **INMATE BOATMAN:** Okay.

25         **DEPUTY COMMISSIONER RODRIGUEZ:** But

26   generally when your points go up you're aware that

27   usually you did something wrong.

25

1        **INMATE BOATMAN:**  Yeah, you did -- Yeah.
2        **DEPUTY COMMISSIONER RODRIGUEZ:**  Okay?
3        **INMATE BOATMAN:**  Okay.
4        **DEPUTY COMMISSIONER RODRIGUEZ:**  All right.
5    Your current custody is Medium A.  Your current
6    assignment, your vocational machine shop with
7    satisfactory progress reports.  I note you did
8    complete your GED in February 25, 1993.  Also note
9    that you did complete a welding course on December
10   20, 1994.  You also completed a machine tool
11   technology course dated January 13, 1999.  You've
12   been an active participant in Narcotics Anonymous.
13   The most current chrono is April 14, 2003.  What's
14   the matter?
15       **INMATE BOATMAN:**  Oh, I think I have a
16   couple that weren't also there.  I'm sorry.
17       **DEPUTY COMMISSIONER RODRIGUEZ:**  Well,
18   that's all right.
19       **INMATE BOATMAN:**  Okay.
20       **DEPUTY COMMISSIONER RODRIGUEZ:**  I mean, the
21   main thing is --
22       **INMATE BOATMAN:**  Okay.
23       **DEPUTY COMMISSIONER RODRIGUEZ:**  -- you're
24   still active in NA.
25       **INMATE BOATMAN:**  Yeah.  Okay.
26       **DEPUTY COMMISSIONER RODRIGUEZ:**  So, I'm
27   recognizing that.

26

1          **INMATE BOATMAN:**  Okay.

2          **DEPUTY COMMISSIONER RODRIGUEZ:**  I won't

3     read every one of them.

4          **INMATE BOATMAN:**  Oh, no, no.

5          **DEPUTY COMMISSIONER RODRIGUEZ:**  But, I

6     mean, we do acknowledge that you have been an

7     active participant, and that's the purpose of the

8     128 chrono to show that you are still actively

9     participating --

10         **INMATE BOATMAN:**  Okay.

11         **DEPUTY COMMISSIONER RODRIGUEZ:**  -- in the

12    program.  Do you study the 12 steps?

13         **INMATE BOATMAN:**  Yes, I have studied them.

14         **DEPUTY COMMISSIONER RODRIGUEZ:**  And do you

15    know what step number eight it?

16         **INMATE BOATMAN:**  Yeah, making a list of all

17    persons we have harmed and become willing to make

18    amends to them all.

19         **DEPUTY COMMISSIONER RODRIGUEZ:**  If you had

20    to make that list today here before this Panel, who

21    would be at the top of that list?

22         **INMATE BOATMAN:**  It would -- Well, it's

23    always been John's family.

24         **DEPUTY COMMISSIONER RODRIGUEZ:**  And who is

25    John?

26         **INMATE BOATMAN:**  The victim.

27         **DEPUTY COMMISSIONER RODRIGUEZ:**  And what's

27

1    his last name?

2         **INMATE BOATMAN:** Sousa.

3         **DEPUTY COMMISSIONER RODRIGUEZ:** Okay. All

4    right. I also note that you have a couple

5    laudatory chronos here that are both dated -- Well,

6    actually, one chrono, two copies, dated July 1,

7    2003. And this is for -- Oh, excuse me. There are

8    two of them. They're both -- They're dated from

9    two correctional staff, and basically, one is from

10   a correctional officer J. Robinson,

11   R-O-B-I-N-S-O-N. Says that he's worked around you

12   for the past three years, and addresses your

13   professionalism. And he feels in his opinion that

14   once you're released from prison you'll be a

15   positive and productive citizen. Also, another one

16   from an R. McMaster, capital M-C capital

17   M-A-S-T-E-R, correctional -- he's also a

18   correctional officer, he or she.

19        **INMATE BOATMAN:** Yeah, he.

20        **DEPUTY COMMISSIONER RODRIGUEZ:** All right.

21   And also says that he's known you for about 10

22   years, or she -- He?

23        **INMATE BOATMAN:** He, yes.

24        **DEPUTY COMMISSIONER RODRIGUEZ:** He's known

25   you for 10 years. Worked closely around you.

26   Basically says you're dependable, and also says

27   that once paroled that you'd do well -- continue to

28

1    do well, and you'd be a positive and productive

2    citizen.  You have three additional chronos from --

3    that are dated 2/3/2003, which is February 3, 2003,

4    March 31, 2003 and June 31, 2003, also from a

5    spiritual class you are attending.  And says that

6    you're actively participating in the Catholic

7    Chaplain's class.  And these are all from the same.

8    Oh, these -- Two of them are from John --

9           **INMATE BOATMAN:**  Yes.  Oh, excuse me.

10          **DEPUTY COMMISSIONER RODRIGUEZ:**  Or Jack,

11   excuse me, Heffernan.

12          **INMATE BOATMAN:**  Yes.

13          **DEPUTY COMMISSIONER RODRIGUEZ:**  That's

14   H-E-F-F-E-R-N-A-N.  And the third one is from a

15   John Kelly, K-E-L-L-Y, and basically, again, talks

16   about your active participation in attending the

17   Tuesday night class.

18          **INMATE BOATMAN:**  Okay.

19          **DEPUTY COMMISSIONER RODRIGUEZ:**  Okay.

20   Also, you've been active in the -- You completed as

21   a -- You participated as a volunteer server for a

22   three day retreat in the Kairos program, and that

23   was completed in February of this year.  You also

24   have a number of courses that you attended, which

25   are already on the record --

26          **INMATE BOATMAN:**  Oh.

27          **DEPUTY COMMISSIONER RODRIGUEZ:**  -- which

29

1   are self-help groups.

2           **INMATE BOATMAN:**  Okay.

3           **DEPUTY COMMISSIONER RODRIGUEZ:**  I'm only

4   really addressing the ones you've done --

5           **INMATE BOATMAN:**  Okay.

6           **DEPUTY COMMISSIONER RODRIGUEZ:**  -- since

7   your last Board appearance, okay?

8           **INMATE BOATMAN:**  Okay.

9           **DEPUTY COMMISSIONER RODRIGUEZ:**  So, we

10  haven't left them out.

11          **INMATE BOATMAN:**  All right.

12          **DEPUTY COMMISSIONER RODRIGUEZ:**  And we are

13  aware of them.  Okay?

14          **INMATE BOATMAN:**  Okay.

15          **DEPUTY COMMISSIONER RODRIGUEZ:**  All right.

16  I want to jump back real quick to one thing.  Whose

17  idea or who had the -- put the plan together to do

18  the robbing?

19          **INMATE BOATMAN:**  It was Harold Jones.

20          **DEPUTY COMMISSIONER RODRIGUEZ:**  It wasn't

21  you?

22          **INMATE BOATMAN:**  No, it was not.

23          **DEPUTY COMMISSIONER RODRIGUEZ:**  Let me go

24  back to your -- the institution case summary

25  report, which --

26          **INMATE BOATMAN:**  Okay.

27          **DEPUTY COMMISSIONER RODRIGUEZ:**  -- is at

30

1    the -- tabbed under cumulative summary --

2    cumulative case summary.  And it's the evaluation

3    -- This was prepared by Correctional Counselor

4    C. Goodlow, G-O-O-D-L-O-W, correctional counselor

5    one.  And this was done at NRC, which is Northern

6    Reception Center at California Men's Facility.

7          **INMATE BOATMAN:**  Yes.

8          **DEPUTY COMMISSIONER RODRIGUEZ:**  Date of

9    this is September 15, 1987.  Under evaluation it

10   says, "He," which is synonymous with you,

11   Mr. Boatman, "He also stated that killing the clerk

12   was not part of his plan as he was shocked one of

13   the co-defendants shot the clerk."  Now, also,

14   going to the most current Board report, and this is

15   from -- that was prepared here for this hearing.

16         **INMATE BOATMAN:**  Yes.

17         **DEPUTY COMMISSIONER RODRIGUEZ:**  And the

18   author of this report is the initial B. Kemp,

19   K-E-M-P, correctional counselor one.  Going to the

20   second page of that report under prisoner's version

21   -- And you did read this, correct?

22         **INMATE BOATMAN:**  Yes, I did.

23         **DEPUTY COMMISSIONER RODRIGUEZ:**  You did do

24   an Olson Review?

25         **INMATE BOATMAN:**  Yes, I did.

26         **DEPUTY COMMISSIONER RODRIGUEZ:**  So, you're

27   aware of what's in here.

31

1          **INMATE BOATMAN:** Uh-hmm.

2          **DEPUTY COMMISSIONER RODRIGUEZ:** Okay.

3    Under prisoner's version it notes here:

4               "Boatman added that he was supposed

5               to be the getaway driver and stay in

6               the car.  However, in his drug

7               induced state of mind he was

8               concerned that if he was not more

9               active, Jones would keep all the

10              money.  Upon arrival at the 41

11              Market, Boatman told Montgomery to

12              drive so that he could be the

13              lookout.  As they fled, Boatman

14              asked Jones why he shot the clerk,

15              and Jones reported that he thought

16              the clerk was reaching for a gun.

17              After the offense, Boatman dropped

18              off the two conspirators at their

19              house and then returned to his home

20              and deflated a tire to make it

21              appear that his car was disabled."

22   This leads me to believe that you took a more

23   active role.

24         **INMATE BOATMAN:** Well, at that time I was

25   quite confused.

26         **DEPUTY COMMISSIONER RODRIGUEZ:** Okay.  And

27   that's the time we're talking about.

32

1          **INMATE BOATMAN:** Yes.  I --

2          **DEPUTY COMMISSIONER RODRIGUEZ:** So, what

3      was your role?  You weren't just --

4          **INMATE BOATMAN:** I just didn't want to --

5      Well, what I wanted to do, instead of just being

6      the driver, I thought he would just keep all the

7      money.  That was my thoughts at that time.

8          **DEPUTY COMMISSIONER RODRIGUEZ:** But you had

9      the car, right?

10         **INMATE BOATMAN:** Yes, I did.

11         **DEPUTY COMMISSIONER RODRIGUEZ:** You had the

12     weapon, right?

13         **INMATE BOATMAN:** Yes.

14         **DEPUTY COMMISSIONER RODRIGUEZ:** You

15     provided all that, correct?

16         **INMATE BOATMAN:** Yes, I did.

17         **DEPUTY COMMISSIONER RODRIGUEZ:** So, I'm

18     going to ask you, and it's important to be truthful

19     to this Panel.

20         **INMATE BOATMAN:** Okay.

21         **DEPUTY COMMISSIONER RODRIGUEZ:** And being

22     less than truthful doesn't help you today.

23         **INMATE BOATMAN:** Yeah, I know.

24         **DEPUTY COMMISSIONER RODRIGUEZ:** And it's

25     all I'm going to really ask you.  You took more of

26     a leadership role, didn't you?

27         **INMATE BOATMAN:** More of a leadership?

33

1          **DEPUTY COMMISSIONER RODRIGUEZ:**  Exactly.

2    Providing a gun, providing the vehicle, dropping

3    your co-conspirators off, telling them what you're

4    going to do.  If this Jones was running the show,

5    in just reading or hearing what you're saying --

6          **INMATE BOATMAN:**  Yeah.

7          **DEPUTY COMMISSIONER RODRIGUEZ:**  -- that he

8    would be telling you what you were doing.  But you,

9    in reading both of these reports, and you heard

10   what I wrote [sic] --

11         **INMATE BOATMAN:**  Yes.

12         **DEPUTY COMMISSIONER RODRIGUEZ:**  -- you told

13   the people what role they were going to take.

14         **INMATE BOATMAN:**  No, I didn't.  At that

15   time I asked him.  I didn't say, Butch, just drive.

16   I said, do you want to be the driver?  I said, I

17   will be the lookout.  That's what I had stated.

18         **DEPUTY COMMISSIONER RODRIGUEZ:**  Okay.

19   Again, like I said, you said this was not part of

20   his plan, being you.

21         **INMATE BOATMAN:**  Uh-hmm.  Part of his plan.

22         **DEPUTY COMMISSIONER RODRIGUEZ:**  I want you

23   to be truthful with me.

24         **INMATE BOATMAN:**  Yes, I am being truthful.

25   I am.

26         **DEPUTY COMMISSIONER RODRIGUEZ:**  Okay.  So,

27   you're telling me that you weren't in the lead

34

1   role?

2          **INMATE BOATMAN:** I was -- Put it this way,

3   I was in the lead role, considering what the things

4   that I was doing.  I guess that is.  I was involved

5   in a serious crime.

6          **DEPUTY COMMISSIONER RODRIGUEZ:** But you

7   understand what I'm saying, though?  You produced

8   the car.

9          **INMATE BOATMAN:** Yes, I did.

10         **DEPUTY COMMISSIONER RODRIGUEZ:** You

11  produced the gun.

12         **INMATE BOATMAN:** Yes.

13         **DEPUTY COMMISSIONER RODRIGUEZ:** And it was

14  you, Boatman --

15         **INMATE BOATMAN:** Yes.

16         **DEPUTY COMMISSIONER RODRIGUEZ:** -- correct?

17         **INMATE BOATMAN:** Yes.

18         **DEPUTY COMMISSIONER RODRIGUEZ:** Not Jones.

19         **INMATE BOATMAN:** Yes.

20         **DEPUTY COMMISSIONER RODRIGUEZ:** All right.

21  So, you were -- You had more of a leadership role,

22  then?

23         **INMATE BOATMAN:** Exactly.

24         **DEPUTY COMMISSIONER RODRIGUEZ:** Okay.

25         **INMATE BOATMAN:** That's true.

26         **DEPUTY COMMISSIONER RODRIGUEZ:** Thank you.

27         **INMATE BOATMAN:** Yes, Sir.

35

1　　　**DEPUTY COMMISSIONER RODRIGUEZ:** All right.

2　Going to your CDC 115's, or your disciplinary

3　history, you've -- since being incarcerated in the

4　California Department of Corrections, you've

5　received no CDC 115's, either administrative or

6　serious.  Also, you've received a total of three

7　128(a) counseling chronos.  The last one you

8　received was April 22, 1999 for responsibility for

9　count.  Going to the -- Does everything that I've

10　read up to this point appear correct to you?

11　　　**INMATE BOATMAN:** Yes, it does.

12　　　**DEPUTY COMMISSIONER RODRIGUEZ:** Okay.

13　Going to the counselor's report, this is, again,

14　from the Board report that was prepared for this

15　hearing, and this was authored by B. Kemp,

16　K-E-M-P.  Going to the sixth page, under heading of

17　summary, "Based on his prior history,

18　psychologist's reports and prison adjustment, it is

19　this writer's belief that Boatman would pose a low

20　degree of threat to the public if released from

21　prison at this time."  Going to the psych report,

22　I'm not going to read this report in its entirety,

23　but I will address areas of this report.  This

24　report is -- was prepared here at San Quentin State

25　Prison.  Date of this report is September 29, 2000.

26　It's a 10 page report.  The author of this report

27　is the initial S. Buchan.

36

1        **INMATE BOATMAN:** Buchan.

2        **DEPUTY COMMISSIONER RODRIGUEZ:** Buchan,

3   capital B-U-C-H-A-N, clinical psychologist. Going

4   to page five, under heading of substance abuse, you

5   admitted that you had a serious substance abuse

6   problem, right?

7        **INMATE BOATMAN:** Yes.

8        **DEPUTY COMMISSIONER RODRIGUEZ:** Did you --

9   You were using cocaine. You drank. You used

10  marijuana. And, basically, you were freebasing

11  cocaine. My -- Did you use any injectables at all?

12       **INMATE BOATMAN:** No, I didn't.

13       **DEPUTY COMMISSIONER RODRIGUEZ:** You didn't

14  use any heroin?

15       **INMATE BOATMAN:** No heroin.

16       **DEPUTY COMMISSIONER RODRIGUEZ:** Okay.

17       **INMATE BOATMAN:** Cocaine was it.

18       **DEPUTY COMMISSIONER RODRIGUEZ:** How about

19  uppers or downers, any of those drugs?

20       **INMATE BOATMAN:** No, none of that.

21       **DEPUTY COMMISSIONER RODRIGUEZ:** Okay. Did

22  you do any inhalants, any glue or paint?

23       **INMATE BOATMAN:** No, I did not.

24       **DEPUTY COMMISSIONER RODRIGUEZ:** No? Okay.

25  And, again, you've been very active in Narcotics

26  Anonymous as well as the Catargio -- How do you

27  pronounce that?

37

1        **INMATE BOATMAN:** Catargio.

2        **DEPUTY COMMISSIONER RODRIGUEZ:** Catargio.

3    I always get that -- Going to page six, under

4    clinical diagnosis and level of functioning, Axis

5    I, no diagnosis, Axis II, no diagnosis, Axis III,

6    none reported, Axis IV, incarceration. Going to --

7    Under the hearing of review of life crime, going to

8    page nine, notes here that, "Mr. Boatman has deep

9    remorse for his crime and accepts full

10   responsibility for his participation." And, again,

11   the participation you now admit you had more of a

12   leadership role, correct?

13       **INMATE BOATMAN:** That is true.

14       **DEPUTY COMMISSIONER RODRIGUEZ:** Okay.

15       **INMATE BOATMAN:** What I did was --

16       **DEPUTY COMMISSIONER RODRIGUEZ:** Okay.

17   Okay. I just want you to understand what you're

18   saying. All right?

19       **INMATE BOATMAN:** Okay.

20       **DEPUTY COMMISSIONER RODRIGUEZ:** He accepts

21   his sentence as a just one. Says here:

22          "I think I am fortunate for getting

23          more than I did, because I played a

24          major factor in a man's death. It

25          was my car. I got the gun, and I

26          went in the store. A human life has

27          way more value than any time you can

38

1           put on it."
2    I was also going to address that too.  You
3    acknowledge, even in this report here, you provided
4    the car and you provided the gun, correct?
5           **INMATE BOATMAN:**  Yes.
6           **DEPUTY COMMISSIONER RODRIGUEZ:**  Okay.  And
7    I'll go back.  Was this your idea?
8           **INMATE BOATMAN:**  Idea of what?
9           **DEPUTY COMMISSIONER RODRIGUEZ:**  To do this
10   robbery?
11          **INMATE BOATMAN:**  No, it was not.
12          **DEPUTY COMMISSIONER RODRIGUEZ:**  Okay.  You
13   just said, hey, I'll give you a car and I'll give
14   you a gun?
15          **INMATE BOATMAN:**  Well, we went around and
16   we were smoking crack in the house, and then it
17   came up with Harold.  He said he had done it before
18   and it would be easy to do it again.  The only
19   thing I had to do is go get the car and get the
20   gun.  It did not come up -- I did not bring that
21   up.
22          **DEPUTY COMMISSIONER RODRIGUEZ:**  Okay.  But
23   once you got there you took more of a leadership
24   role, which you --
25          **INMATE BOATMAN:**  I got more involved --
26          **DEPUTY COMMISSIONER RODRIGUEZ:**  --
27   acknowledged, correct?

39

1        **INMATE BOATMAN:** Exactly. I got more

2    involved as the day progressed.

3        **DEPUTY COMMISSIONER RODRIGUEZ:** Okay.

4        **INMATE BOATMAN:** I did.

5        **DEPUTY COMMISSIONER RODRIGUEZ:** Thank you.

6    Under assessment of dangerousness, "Within a

7    controlled setting Mr. --" Oh, it notes here:

8             "He is a role model for good

9             behavior. He is widely respected

10            amongst staff. He programs really

11            well, and as long as I have known

12            him, which is many, many years, he

13            has never caused a problem. If

14            released to the outside community,

15            potential for danger in the

16            community if released appears to be

17            quite minimal. He had no history of

18            violence prior to the incident

19            offense. He has had no difficulty

20            relating to others and conforming to

21            institutional demands in a very

22            stressful institutional setting."

23    Last page under significant risk factors,

24    precursors to violence, "There is no risk factors

25    or precursors to violence." Under clinician

26    observation, comments and recommendations:

27            "Although he did not actually do the

40

1           murder, he torments himself for

2           participating in a crime that became

3           murder, and for making this murder

4           possible by supplying the car and

5           the gun.  This is as it should be,

6           yet this man is not a criminal.  I

7           believe that it is very unlikely

8           that Boatman would behave violently

9           if released, that his violence

10          potential is actually less than that

11          of an average person.  Should he be

12          released, he will be a solid

13          citizen, son, brother and hopefully

14          someday a husband and a father."

15  At this time -- Oh, excuse me.  I'm going to your

16  parole plans.  We have -- I have new letters you

17  just produced so I really -- I'm going to go over

18  these slowly because --

19          **INMATE BOATMAN:**  Okay.

20          **DEPUTY COMMISSIONER RODRIGUEZ:**  -- I

21  haven't had an opportunity to go over them.

22  Unless, Ms. Daly, you'd like to go --

23          **PRESIDING COMMISSIONER DALY:**  No.

24          **DEPUTY COMMISSIONER RODRIGUEZ:**  Okay.  The

25  ones I have read already, there are six letters of

26  support.  These are basically from volunteers here

27  at the prison.

41

1          **INMATE BOATMAN:**  Yes.

2          **DEPUTY COMMISSIONER RODRIGUEZ:**  Yeah.

3    There is one from a -- And these are, again,

4    volunteers.  They're not employees of the prison.

5    One is from a David H. Peironnet.

6          **INMATE BOATMAN:**  Yeah.

7          **DEPUTY COMMISSIONER RODRIGUEZ:**

8    P-E-I-R-O-N-N-E-T.  Basically, you know, he talks

9    about your leadership abilities, his desire for

10   self-improvement, and noting -- basically asking

11   for this Board to take a look at this and take a

12   look at your behavior and consider releasing you to

13   the community.  Also have one from a Deacon George

14   A. Salinger, S-A-L-I-N-G-E-R, acting Catholic

15   Chaplain here at San Quentin State Prison,

16   basically asking that you deserve a chance to be

17   paroled, and it says that you'll become a

18   productive member of society, and that he's willing

19   to -- and he says, "And I am more than certain

20   would be available to help youth that are at risk

21   to assist them from coming into prison."  Also, a

22   George Biniek.

23         **INMATE BOATMAN:**  Yeah.

24         **DEPUTY COMMISSIONER RODRIGUEZ:**  Okay.

25         **INMATE BOATMAN:**  Yeah.

26         **DEPUTY COMMISSIONER RODRIGUEZ:**

27   B-I-N-I-E-K.  Again, a volunteer.  Notes that he's

42

1   come to know you fairly well.

2        "Should you grant Mr. Boatman

3        parole, he is anxious to return to

4        society so that he can begin to make

5        a positive contribution with what

6        remains of his life.  As a member of

7        his Kairos family, I stand ready to

8        assist him in any way I can to help

9        him achieve his goals."

10  Also, you have one from Raymond McKeon, capital

11  M-C-K-E-O-N.  He's Director of Detention Ministry,

12  Arch Diocese of San Francisco.  "I highly recommend

13  Bert for parole.  The community he is released to

14  will be getting a (inaudible) spiritual energy that

15  will serve as a constructive role model for the

16  youth that he interacts with."  Next one from a

17  John Kelly, K-E-L-L-Y.  Also addressing that he is

18  a member of the prison here.  That -- A volunteer

19  at the prison.

20       **INMATE BOATMAN:**  Yeah.

21       **DEPUTY COMMISSIONER RODRIGUEZ:**

22       "I am also in a position to assist

23       him in his adjustment process, since

24       I am the former executive director

25       of two human service agencies that

26       help people with their basic needs

27       for food, shelter and employment."

43

1    In other words, he has some contacts that you could

2    utilize once you get out. The last one is from a

3    retired instructor that used to be here at the

4    institution. His name is Daryl Hildreth,

5    H-I-L-D-R-E-T-H. He's a retired welding

6    instructor. He used to be here at San Quentin

7    State Prison. And he states he wrote you -- wrote

8    a letter in the past in April 17, 2002, and he

9    basically says that he stands by that letter and

10   still believes that you meet the expectations he

11   originally stated in his first letter. You have a

12   letter here from a Jim Boatman.

13          **INMATE BOATMAN:** My mom and my dad.

14          **DEPUTY COMMISSIONER RODRIGUEZ:** Okay. Jim

15   and Aieda?

16          **INMATE BOATMAN:** Aieda.

17          **DEPUTY COMMISSIONER RODRIGUEZ:** Aieda

18   Boatman, B-O-A-T-M-A-N. And let me spell Aieda,

19   A-I-E-D-A, Boatman. Stepfather and mother. And

20   you acknowledge that you consider him your father,

21   correct?

22          **INMATE BOATMAN:** Yes.

23          **DEPUTY COMMISSIONER RODRIGUEZ:** Here --

24   Actually, what they're offering you is a place to

25   live. "Christopher is welcome to live here at home

26   with us indefinitely." So, you do have -- And he

27   talks about being -- that you're a loving son. You

44

1    could be a productive citizen.  And they are

2    basically looking that you get -- the Board takes

3    this into consideration and gives you a chance.

4    There is another letter from a --

5              **INMATE BOATMAN:**  Ontre.

6              **DEPUTY COMMISSIONER RODRIGUEZ:**  Pardon me?

7              **INMATE BOATMAN:**  Ontre.

8              **DEPUTY COMMISSIONER RODRIGUEZ:**  Ontre.  I'm

9    going to spell that one.

10             **INMATE BOATMAN:**  Yeah.

11             **DEPUTY COMMISSIONER RODRIGUEZ:**  Ontre

12   Cornelius Boatman, Ontre being spelled capital

13   O-N-R-T-R-E, Boatman, B-O-A-T-M-A-N.  He is your

14   brother?

15             **INMATE BOATMAN:**  Yes.

16             **DEPUTY COMMISSIONER RODRIGUEZ:**  And

17   basically offers support for you.  Basically saying

18   that, you know:

19             "I wish that each of you involved in

20             the determination of the ruling had

21             the inmate -- intimate insight of my

22             brother that I have.  If you had,

23             your approval of Bert's parole would

24             be imminent, immediate and

25             satisfying."

26   And, basically, he's talking about, you know, you

27   being together in the -- And he's retired from the

45

1   Air Force, huh?

2           INMATE BOATMAN:  Yes, he is.

3           DEPUTY COMMISSIONER RODRIGUEZ:  Okay.  How

4   old are you?

5           INMATE BOATMAN:  I'm almost 38.  In a

6   couple weeks I'll be --

7           DEPUTY COMMISSIONER RODRIGUEZ:  He's your

8   younger brother, then, huh?

9           INMATE BOATMAN:  Yeah, he's my younger

10  brother.  He's 36.

11          DEPUTY COMMISSIONER RODRIGUEZ:  He's

12  legally blind it says.

13          INMATE BOATMAN:  Yeah.  He had a little

14  accident.

15          DEPUTY COMMISSIONER RODRIGUEZ:  Okay.  And

16  he also talks about his wife, which is your sister-

17  in-law.

18          INMATE BOATMAN:  Yes.

19          DEPUTY COMMISSIONER RODRIGUEZ:  And that's

20  Danielle?

21          INMATE BOATMAN:  Danielle.

22          DEPUTY COMMISSIONER RODRIGUEZ:  Okay.  And

23  she shows strong support for you also.  We have one

24  from a Brandy Boatman.

25          INMATE BOATMAN:  Yes, that's my little

26  sister.

27          DEPUTY COMMISSIONER RODRIGUEZ:  That's your

46

1    little sister?

2          INMATE BOATMAN:  Yes.

3          DEPUTY COMMISSIONER RODRIGUEZ:  And that's

4    B-O-A-T-M-A-N.  And basically she's requesting

5    that, you know, we take a look at you for the

6    person you are today, basically.  And it also says

7    here, real strong statement, "Know Bertram is not

8    lacking in family support, so what I really wish to

9    impress upon this Board today is time.  Time past

10   he present time served, time reflected upon."  So,

11   it's again, reaffirming the plans or the support

12   that your family is all giving you.

13         INMATE BOATMAN:  Yes.

14         DEPUTY COMMISSIONER RODRIGUEZ:  There is

15   one from a Sail R. Boatman, and the spelling of

16   Sail is S-A-I-L, Boatman, B-O-A-T-M-A-N.  Also your

17   brother.  That's your youngest brother, huh?

18         INMATE BOATMAN:  Yeah, that's my youngest

19   brother.

20         DEPUTY COMMISSIONER RODRIGUEZ:  All right.

21   And, basically, "I am 100 percent positive when

22   he's released he will be a law abiding citizen."

23   He's going to be your NA sponsor.  So, in other

24   words, he was into drugs too?

25         INMATE BOATMAN:  Yes, he was.

26         DEPUTY COMMISSIONER RODRIGUEZ:  Okay.

27         INMATE BOATMAN:  He just had went to the

47

1  convention.  He went to a program, and what he does
2  now is he brings meetings into the community.  And
3  so --
4          **DEPUTY COMMISSIONER RODRIGUEZ:**  It says
5  here, "I will be providing Bert with employment."
6  But it doesn't say what kind of employment.
7          **INMATE BOATMAN:**  It's well drilling.  I
8  want to show you whenever I get a chance.
9          **DEPUTY COMMISSIONER RODRIGUEZ:**  Okay.
10  You'll have that opportunity.
11          **INMATE BOATMAN:**  Okay.
12          **DEPUTY COMMISSIONER RODRIGUEZ:**  And it says
13  also, he's willing to provide you with a room if
14  needed.  And so that's actually two plans for --
15  Now, he doesn't live with your mother and father,
16  does he?
17          **INMATE BOATMAN:**  No, he doesn't.
18          **DEPUTY COMMISSIONER RODRIGUEZ:**  Okay.
19          **INMATE BOATMAN:**  He's like a quarter of a
20  mile away from them.
21          **DEPUTY COMMISSIONER RODRIGUEZ:**  Yeah, and
22  it basically says he'll do whatever he needs
23  necessary to assist you.  You have one from
24  Ms. Arlene Boatman, B-O-A-T-M-A-N.  This is your
25  sister?
26          **INMATE BOATMAN:**  That's my older sister.
27          **DEPUTY COMMISSIONER RODRIGUEZ:**  Your older

48

1   sister?

2        **INMATE BOATMAN:**  Yes.

3        **DEPUTY COMMISSIONER RODRIGUEZ:**  Okay.  And,

4   also, she's offering you a place to stay.  "Bert is

5   welcome to live with me until he is ready to move

6   into his own place.  Housing, clothing and

7   transportation are rudimentary in this family

8   (inaudible)."  So, you're not going to go without

9   clothing or a roof over your head or food, correct?

10       **INMATE BOATMAN:**  Yes.

11       **DEPUTY COMMISSIONER RODRIGUEZ:**  As long as

12  you have that family.  It seems like they're all

13  very, very supportive.  You have one here from

14  Shirley Boatman Rowe, R-O-W-E, another sister?

15       **INMATE BOATMAN:**  No, that's my aunt.

16       **DEPUTY COMMISSIONER RODRIGUEZ:**  Oh, okay.

17  Oh, "In reference to my nephew, Christopher."

18  Christopher?

19       **INMATE BOATMAN:**  Yes.

20       **DEPUTY COMMISSIONER RODRIGUEZ:**  Oh, that's

21  right.  Going back and forth with this Bert.

22       **INMATE BOATMAN:**  Yeah, yeah.

23       **DEPUTY COMMISSIONER RODRIGUEZ:**  Bert is the

24  name the family calls you.

25       **INMATE BOATMAN:**  Exactly.

26       **DEPUTY COMMISSIONER RODRIGUEZ:**  Basically,

27  you know, she talks about her being a teacher, and

49

1    she's offering encouragement, love and financial

2    support if needed.  You have another one from a

3    Dr. Bruce W. Poole, P -- and a Mary Marshall-Poole,

4    P-O-O-L-E.  Are these family friends?

5            **INMATE BOATMAN:**  Yes.  No, they're my

6    cousins.

7            **DEPUTY COMMISSIONER RODRIGUEZ:**  Okay.  And,

8    basically, it -- "We would like for you to know

9    that when the time comes for Christopher to be

10   released, he has our full support."  And they were

11   offering to assist you in finding gainful

12   employment.  You have one from a John Kelly.

13           **INMATE BOATMAN:**  I think you --

14           **DEPUTY COMMISSIONER RODRIGUEZ:**  Oh, these

15   ones -- I already read this one.

16           **INMATE BOATMAN:**  Yeah.

17           **DEPUTY COMMISSIONER RODRIGUEZ:**  Kelly

18   Peironnet.

19           **INMATE BOATMAN:**  Yes.

20           **DEPUTY COMMISSIONER RODRIGUEZ:**  This one I

21   read.  And this one is from a Mr. Witt.

22           **INMATE BOATMAN:**  Yes.

23           **DEPUTY COMMISSIONER RODRIGUEZ:**  Tom E.

24   Witt, W-I-T-T.  And he's affiliated -- He's a

25   volunteer affiliated with the Kairos program?

26           **INMATE BOATMAN:**  Yes, he is.

27           **DEPUTY COMMISSIONER RODRIGUEZ:**  And

50

1   basically asking for you to be considered for

2   parole.  "For these reasons I ask that you grant

3   Bert --"  Excuse me one moment, please.

4        (Thereupon, the tapes were turned over.)

5        DEPUTY COMMISSIONER RODRIGUEZ:  We're back

6   on record.  And, again, I'm reading from the letter

7   of Tom Witt, W-I-T-T, and basically he's with the

8   Kairos program, and what he's saying is that, you

9   know, "I truly believe Bert has humbly paid his

10  debt to society, and when he is (inaudible) to make

11  a positive contribution to the world outside San

12  Quentin."  So, basically, he's offering you a lot

13  of moral support.  You have another letter from a

14  -- I read one from the Deacon.  This is from

15  Mr. McKeon.  I read that one.  And this is from

16  your welding instructor, Mr. Hildreth.  I read that

17  one.  So, that's all of them.  You had something,

18  one other one, you said, about welding?

19        INMATE BOATMAN:  No, I -- No.  The business

20  itself, my brother's.

21        DEPUTY COMMISSIONER RODRIGUEZ:  Oh, your

22  brother's business.

23        INMATE BOATMAN:  Yes.

24        DEPUTY COMMISSIONER RODRIGUEZ:  Oh, excuse

25  me.

26        INMATE BOATMAN:  So, I could show you the

27  kind of work that I would be doing.  I probably

51

1    (inaudible).

2            **DEPUTY COMMISSIONER RODRIGUEZ:**  Well, let

3    me finish these.  You have three more here.  This

4    is from a Jack Tanney, T-A-N-N-E-Y.  This is Tanney

5    Machine and Manufacturing.  Said he received your

6    resume.  "I can state most assuredly that he would

7    be considered for employment in our company upon

8    his release."  You have one from a Robert Armey,

9    A-R-M-E-Y, from Rutter Armey, R-U-T-T-E-R,

10   Incorporated.  He also received your letter and

11   resume.  "It appears you would be qualified to

12   serve as journeyman (inaudible).  Currently all of

13   our positions are full (inaudible) however, they

14   could change at any time."  So, he would consider

15   giving you an interview.

16           **INMATE BOATMAN:**  Yes.

17           **DEPUTY COMMISSIONER RODRIGUEZ:**  This one is

18   from James A. Belton, president of Belton

19   Fabricating and Construction.  He also received

20   your resume and a letter, and basically says

21   they're not hiring at this time, but acknowledged

22   you do have the experience that they are looking

23   for, and that, "If we are hiring, we would

24   definitely consider you for employment."  Now, what

25   were you going to say about your brother?  I'm

26   sorry.

27           **INMATE BOATMAN:**  Oh, I was going -- The

52

1    pictures I wanted to show you that the work that I

2    would be doing.  I'll give them to you.

3        **DEPUTY COMMISSIONER RODRIGUEZ:**  Okay.  And

4    what is this now, if you could explain it?

5        **INMATE BOATMAN:**  This is well drilling,

6    water wells.  And what I'd like to say is that

7    we'll drill approximately three wells a week, and

8    like a 40 foot --

9        **DEPUTY COMMISSIONER RODRIGUEZ:**  Sorry.

10       **INMATE BOATMAN:**  -- well depth with a six

11   inch casing will cost around five thousand dollars.

12   And that's not like including the pumps and

13   foundations that we'll be installing.  So, I'll be

14   able to make enough money to provide for myself as

15   well as my family.

16       **DEPUTY COMMISSIONER RODRIGUEZ:**  Okay.  So,

17   your brother --

18       **INMATE BOATMAN:**  Yes.

19       **DEPUTY COMMISSIONER RODRIGUEZ:**  And that's

20   the job you're talking about.  And what's the name

21   of the business again?

22       **INMATE BOATMAN:**  Well drilling.

23       **DEPUTY COMMISSIONER RODRIGUEZ:**  Well

24   drilling?

25       **INMATE BOATMAN:**  Yes.

26       **DEPUTY COMMISSIONER RODRIGUEZ:**  Okay.  Let

27   me return these.  These are the ones you gave us.

53

1          **INMATE BOATMAN:**  Okay.

2          **DEPUTY COMMISSIONER RODRIGUEZ:**  Also, we

3    send out 3042 notices to all those agencies that

4    have a direct interest in your case, like the

5    District Attorney's Office, law enforcement, victim

6    family members.  And there is -- Am I correct,

7    Commissioner Daly, there is no letters in the file?

8          **PRESIDING COMMISSIONER DALY:**  I saw no

9    letters in the file.

10          **DEPUTY COMMISSIONER RODRIGUEZ:**  Okay.  At

11    this time I'll return to the Chair.

12          **PRESIDING COMMISSIONER DALY:**  Okay.  In

13    fact, in making an inquiry as to whether or not the

14    District Attorney from Fresno was going to be

15    present, it was indicated to officers here that he

16    had no interest in this case.  So, now it's our

17    opportunity to ask for any clarifying questions.  I

18    think things have been pretty well covered.  Do you

19    have any further questions, Commissioner?

20          **DEPUTY COMMISSIONER RODRIGUEZ:**  Not at this

21    time.

22          **PRESIDING COMMISSIONER DALY:**  Do you have

23    any questions, counsel?

24          **ATTORNEY SILVER:**  Thank you.  I do have a

25    couple here --

26          **PRESIDING COMMISSIONER DALY:**  Okay.

27          **ATTORNEY SILVER:**  -- I'd like to just

54

1   follow up on. I noticed that you had no juvenile
2   record, and then you started to get involved with
3   some activities. And I think the Commissioners
4   asked you why that was, and your discussion was
5   related to your parents' breakup. And would you
6   talk about that stress and how significant that
7   stress was in your life just a little bit more
8   briefly so that they can kind of put in context
9   some of the things that you were doing at the time.
10          INMATE BOATMAN: Well, when they -- Our
11  family was a -- it was a real tight family.
12          ATTORNEY SILVER: And your parents
13  divorced?
14          INMATE BOATMAN: Yes.
15          ATTORNEY SILVER: And that was really a
16  significant, significant issue in your life?
17          INMATE BOATMAN: Yes, it was.
18          ATTORNEY SILVER: And --
19          INMATE BOATMAN: It hurt me a lot, that
20  breakup. That bond, we were just so happy out in
21  the country, and we had to go to court and stuff
22  and all that stuff. And but it was really hurtful
23  for me, so I knew what I was doing was wrong, but I
24  did it anyway. I just didn't care.
25          ATTORNEY SILVER: Okay.
26          INMATE BOATMAN: I didn't care.
27          ATTORNEY SILVER: And that led you to --

55

1   into some of these substance abuse.

2       **INMATE BOATMAN:** Yes, it did. I was acting
3   out. I knew --

4       **ATTORNEY SILVER:** And was -- Apparently,
5   from the record, it does indicate there was a lot
6   of drug abuse.

7       **INMATE BOATMAN:** Uh-hmm.

8       **ATTORNEY SILVER:** Some cocaine and things
9   like that. But could you clarify your alcohol
10  abuse, or what there any --

11      **INMATE BOATMAN:** I didn't have -- I had
12  tried it. I had admitted to that I had tried
13  alcohol, but it wasn't something that I was using.
14  I tried it when I was 14 years old. And from the
15  crowd that I was hanging with at that time, they
16  were doing it, so I did it. And it escalated at a
17  later point in my life around 18 or so. And then I
18  started using everyday, but alcohol was not --

19      **ATTORNEY SILVER:** You're talking about the
20  drug use?

21      **INMATE BOATMAN:** Yes, the drug use.

22      **ATTORNEY SILVER:** Because, and again, I
23  don't want to belabor this, but the Governor's
24  letter did speak considerably about alcohol abuse
25  problem, and from the information that was in the
26  file, it did not appear that there was a
27  significant problem, but there was some use.

56

1          INMATE BOATMAN:  Yes.

2          ATTORNEY SILVER:  And so would you

3    characterize your alcohol situation as more alcohol

4    use but not abuse?

5          INMATE BOATMAN:  Exactly.  It was --

6          ATTORNEY SILVER:  But you --

7          INMATE BOATMAN:  I didn't abuse it.

8          ATTORNEY SILVER:  But you did abuse the

9    cocaine.

10         INMATE BOATMAN:  Yes.

11         ATTORNEY SILVER:  And that's really why you

12   spent the therapy and self-help programs in the NA

13   because it was mostly a drug -- it was a drug

14   problem, not an alcohol problem?

15         INMATE BOATMAN:  Yes.

16         ATTORNEY SILVER:  Anything further you want

17   to add on that particular issue?

18         INMATE BOATMAN:  Well, like in September

19   2002, the chronos that I presented, it was -- it is

20   a 12 step drug and alcohol rehabilitation program,

21   and I started taking that program because I thought

22   it would be beneficial prior to me being released

23   back in the mainstream of society.  And but it's a

24   good program and I like it.

25         ATTORNEY SILVER:  Okay.  So --

26         INMATE BOATMAN:  That's what I'm doing at

27   this point.  I've almost been involved in that for

57

1   about a year now.

2       **ATTORNEY SILVER:**  And what's that called?

3       **INMATE BOATMAN:**  It's a spirituality class,

4   but we practice the 12 steps of the tradition of

5   AA.

6       **ATTORNEY SILVER:**  Thank you.

7       **INMATE BOATMAN:**  Yes.

8       **ATTORNEY SILVER:**  Thank you.  I have

9   nothing further.

10      **PRESIDING COMMISSIONER DALY:**  Okay.  Then

11  we can go to closing.

12      **ATTORNEY SILVER:**  Okay.  The evidence

13  presented at the hearing today would indicate that

14  Mr. Boatman is suitable for parole and would not

15  pose an unreasonable risk of danger to society or a

16  threat to the public safety if released.  He has no

17  juvenile record.  He indicated the kind of crime

18  that he was getting involved with, which was drugs

19  and theft, came as a result of significant stress

20  in his life because of his parents' breakup.  That

21  he didn't care about anything.  He didn't care

22  about his goals, he didn't care about his life.

23  And as Commissioner Rodriguez pointed out, he did

24  play a leadership role in the crime.  I think it's

25  clear he didn't plan it.  He didn't make it up.  He

26  didn't say, let's do this.  But once it became

27  apparent that the plan was brought up, he did offer

58

1  to get involved.  And, again, it kind of shows that
2  he was kind of out of control at that time and
3  very, very upset from his stressful situation.
4  While he's been in prison he has enhanced his
5  ability to function within the law.  He has
6  participated in numerous programs, as been pointed
7  out, and he has numerous chronos from people in the
8  prison who he has worked with that say that he is
9  just a great guy, a model prisoner and is not a
10 threat to society.  He has acquired his GED while
11 he's been in here.  He has spent over seven
12 thousand hours and has a machinist certification,
13 and in welding, and he's also enrolled, I think, in
14 a plumbing program.  He has taken numerous self-
15 help programs, been a long term participant in
16 substance abuse issues associated with NA.  And he
17 has talked about his recent involvement in AA, as
18 well, in the spirituality class that he's taking.
19 Prior to the last -- I think it's interesting to
20 note that he got a date, and then he decided to
21 make sure even more that he was doing -- then he
22 took another class, enrolled in another class in AA
23 and NA before the Governor even pointed out an
24 issue about AA.  So, it's not that he was concerned
25 about his AA problem.  I think he wanted to just
26 continue making sure that he was under control when
27 he got into the community, and that's why he was

59

1   taking those steps.  He's participated in
2   Alternatives to Violence, the Kairos, Catargio and
3   other self-help programs.  He has realistic parole
4   plans.  He's going to live with his family.  He has
5   job offers.  And he maintained positive
6   institutional behavior with no 115's since he's
7   been in custody.  He does indicate that he
8   understands the nature and magnitude of his crime,
9   and takes steps towards good citizenship and
10  responsibility for the crime.  And as Mr. Rodriguez
11  -- Commissioner Rodriguez pointed out in the report
12  by -- the psych report of 2000 by Dr. Buchanan was
13  -- he shows -- makes a number of positive comments
14  about Mr. Boatman, and indicates that the inmate
15  has good insight into his dynamics of his offense,
16  takes responsibility for his actions and his
17  judgment is well above average.  And then he goes
18  on to state that his potential for danger in the
19  community appears to be quite minimal.  So, based
20  upon the evidence presented at the hearing, and in
21  terms of the criteria that the Board would
22  determine and evaluate with respect to
23  Mr. Boatman's safety and threat to the community, I
24  think the Board should find him suitable, and also
25  consider significantly the stress that did occur in
26  his life at that particular time as compared to how
27  he was behaving in his family relationships and his

60

1   conduct in the community prior to that stress.  And
2   we hope that you would find him suitable today.  I
3   don't think he's a threat to society.  Thank you.
4        **PRESIDING COMMISSIONER DALY:**  Okay.
5   Mr. Boatman, this is your opportunity to make a
6   statement regarding your parole suitability, or you
7   can let it rest with what was just presented by
8   your attorney.
9        **INMATE BOATMAN:**  I like what he said, but I
10  would just like to add a few words --
11       **PRESIDING COMMISSIONER DALY:**  Okay.
12       **INMATE BOATMAN:**  -- on top of that.  I have
13  been away from (inaudible) years now.  In that time
14  I've made a lot of significant changes in my life.
15  And I'm not trying to put time on this issue or
16  anything like that because I couldn't serve enough
17  time for what I have done, and I realize that.  But
18  I'm a good man with a good heart, and I care about
19  people.  I have a loving family, beautiful friends,
20  and I'm going to be okay.  I'll never be alone.  I
21  know my criminal history, that is really sad, and
22  it's over.  And I will do what's right.  I will
23  continue to do that.  I have the financial means,
24  the resources, the housing, the employment, the
25  family, the personal support, and that I have
26  everything it takes.  And I think -- I think I'm
27  going to be okay.  In fact, that I also ask that

61

1    you find me suitable today because I can make a

2    difference in the community.  I do it in here, and

3    I'll do it out there, and you have my word on it,

4    both of you.  I won't disappoint you.  And I just

5    hope that you just give me an opportunity.

6         PRESIDING COMMISSIONER DALY:  Okay.  We're

7    going to recess for deliberations.  It is 11:46

8    a.m.

9         INMATE BOATMAN:  Thank you.

10                 R E C E S S

11                    --o0o--

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

State of California

Board of Prison Terms

# Memorandum

Date: _____8/11/03_____

To: Prisoner Central File—Transcript

_____CHRISTOPHER BOATMAN_____ Life Prisoner Name,

_____D·65055_____ CDC #

Subject: **REVIEW OF HEARING TRANSCRIPT**

I have reviewed the hearing transcript concerning a hearing that occurred on

_____7-16-03_____ [date] at _____SAN QUENTIN_____ [location].

The following is a description of the discrepancies found during the review of the hearing transcript:

_No mention of 3042 Notice Responses during_
_decision; however, no responses were rec'd._
_No other issues._

_____PEGGY BAEHUR_____ [Name of the Deputy Commissioner Transcript Reviewer]

_____DEPUTY COMISSIONER_____ [Title]

[Rev. 12/2002]

62

1     CALIFORNIA BOARD OF PRISON TERMS

2         D E C I S I O N

3         DEPUTY COMMISSIONER RODRIGUEZ:  We're back

4     on record.  All parties are present.

5         PRESIDING COMMISSIONER DALY:  Okay.  The

6     Panel has reviewed all of the information received

7     from the public and relied on the following

8     circumstances in concluding the prisoner is not

9     suitable for parole and would pose an unreasonable

10    risk of danger to society or a threat to public

11    safety is released from prison.  This offense was

12    carried out in a very deliberate, callous manner,

13    and it was carried out very premeditated, and it

14    was carried out in a manner which demonstrates a

15    total disregard for any human suffering.  And the

16    motive for the crime was very trivial in relation

17    to the offense, that the sole reason for a person

18    losing his life was to gain money to buy drugs.

19    These conclusions are drawn from the Statement of

20    Facts wherein the prisoner conspired to commit a

21    robbery, supplied a gun, supplied a car, and went

22    as a lookout.  While at the crime scene, the victim

23    was shot and killed.  The prisoner offered no

24    assistance in trying to conceal the crime after the

25    fact.  The prisoner did have an escalating pattern

26    of criminal conduct prior to this, and he was on

27    CHRISTOPHER BOATMAN D-65055 DECISION PAGE 1 7/16/03

63

1    probation at the time that this crime occurred.
2    And he failed to profit from society's previous
3    attempts to correct his criminality, and those
4    attempts included adult probation and county jail.
5    He has an unstable social history and prior
6    criminality, which includes arrests for rape, even
7    though it was reduced down to an illegal sexual
8    intercourse.  It was noted the victim was 14 years
9    of age.  He was arrested for grand theft.  He has
10   been arrested for petty theft, and he has a long
11   history of alcohol, marijuana and cocaine use.  The
12   prisoner has not sufficiently participated in
13   beneficial self-help.  It is to be noted that the
14   prisoner has not received any serious disciplinary
15   reports, and, in fact, has only had one counseling
16   chrono in April of '99, having responsibility for
17   count.  The Panel finds that the prisoner has done
18   a tremendous amount of programming while he has
19   been incarcerated.  He has been involved in
20   Narcotics Anonymous and has taken Alternatives to
21   Violence, Advanced Alternatives to Violence, and
22   has been involved in Kairos, spirituality classes.
23   We noted that he has two vocational certificates.
24   He has laudatory chronos.  He has been involved in
25   the Catargio, and here again, a number of
26   vocational related classes.  However, these
27   **CHRISTOPHER BOATMAN D-65055 DECISION PAGE 2 7/16/03**

64

1    positive aspects of his behavior do not outweigh

2    his suitability for parole.  We're just

3    recommending, Mr. Boatman, that you continue to

4    remain disciplinary free and continue to

5    participate in self-help.

6         **INMATE BOATMAN:**  Okay.

7         **PRESIDING COMMISSIONER DALY:**  I know that

8    this is really disappointing to you, and I think

9    how you handle this is going to be very telling.

10        **INMATE BOATMAN:**  All right.

11        **PRESIDING COMMISSIONER DALY:**  I know it's

12   very difficult when you are getting -- when you've

13   had a date and we've taken it not seeing fit to

14   give you a date at this time.

15        **INMATE BOATMAN:**  Yes.

16        **PRESIDING COMMISSIONER DALY:**  And I know

17   that Commissioner Rodriguez has some things that he

18   would like to speak to --

19        **INMATE BOATMAN:**  Okay.

20        **PRESIDING COMMISSIONER DALY:**  -- about

21   that.  We are going to ask that a new psychiatric

22   exam be completed, because it will be four years by

23   the time you come up to your next hearing, and we

24   want to make sure that everything is as current as

25   possible.  But we are asking for the doctor,

26   specifically, to look at the significance of

27   **CHRISTOPHER BOATMAN D-65055 DECISION PAGE 3 7/16/03**

1   alcohol and drugs as it relates to the commitment

2   offense, and an estimate of your ability to refrain

3   from the use of alcohol and drugs, and the extent

4   to which you have explored the commitment offense

5   and come to terms with the underlying causes.  You

6   know, such as you stated that it was a result of

7   the significant stress in your life with your

8   parents separating, although at the time you were

9   an adult.  And you -- We are asking that the doctor

10  also, again, address your leadership role in the

11  commitment offense.  We saw that as a very big role

12  in this commitment offense.

13           **INMATE BOATMAN:**  Yes.

14           **PRESIDING COMMISSIONER DALY:**  Commissioner

15  Rodriguez?

16           **DEPUTY COMMISSIONER RODRIGUEZ:**  I want to

17  echo with what Commissioner Daly stated.  I mean,

18  you've done a positive program.  There is no doubt

19  about it.  The things that -- today that came to

20  light, and I appreciate you being a little more

21  truthful than you were, possibly, last time in the

22  fact that you did play more of a leadership role,

23  and you never really acknowledged that before.

24           **INMATE BOATMAN:**  Yes.

25           **DEPUTY COMMISSIONER RODRIGUEZ:**  So, that's

26  new and we want that to be addressed, you know, in

27  **CHRISTOPHER BOATMAN D-65055 DECISION PAGE 4 7/16/03**

```
 1   the next psych report.  You need to read all these

 2   reports, too.  And that's like I said, that's why I

 3   asked you if you did do your Olson Review, which

 4   you did, because it is important.  These questions

 5   are going to come up.  You weren't just a backseat

 6   driver, so to speak.  In other words, you just

 7   weren't one of three.  Possibly initially it wasn't

 8   your plan, but when you finally got there you did

 9   take -- assume more of a leadership role, which you

10   acknowledged, and so did your attorney, correct?

11           INMATE BOATMAN:  Yes.

12           DEPUTY COMMISSIONER RODRIGUEZ:  And so, we

13   do want you to be as open and honest with the

14   psychologist next time.  Okay?

15           INMATE BOATMAN:  I have been.

16           DEPUTY COMMISSIONER RODRIGUEZ:  Okay.

17           INMATE BOATMAN:  I have been.

18           ATTORNEY SILVER:  Yeah.  Can we make a

19   comment on that, or is that not appropriate?

20           PRESIDING COMMISSIONER DALY:  It's really

21   not appropriate.

22           ATTORNEY SILVER:  Okay.

23           PRESIDING COMMISSIONER DALY:  We've

24   concluded our findings, and it is --

25           DEPUTY COMMISSIONER RODRIGUEZ:  Wish you

26   the best of luck.

27   CHRISTOPHER BOATMAN D-65055 DECISION PAGE 5 7/16/03
```

67

1           PRESIDING COMMISSIONER DALY:   -- 12:07 p.m.

2    Good luck.

3           INMATE BOATMAN:  All right.

4                      --o0o--

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    PAROLE DENIED

26    FINAL DATE OF DECISION_____ OCT 1 4 2003 _____

27    CHRISTOPHER BOATMAN D-65055 DECISION PAGE 6 7/16/03

68
## CERTIFICATE AND

## DECLARATION OF TRANSCRIBER

I, DEBRA M. SEVEY, a duly designated transcriber, CAPITOL ELECTRONIC REPORTING, do hereby declare and certify under penalty of perjury that I have transcribed tape(s) which total one in number and cover a total of pages numbered 1 through 67, and which recording was duly recorded at CALIFORNIA STATE PRISON, SAN QUENTIN, at SAN QUENTIN, CALIFORNIA, in the matter of the SUBSEQUENT PAROLE CONSIDERATION HEARING of CHRISTOPHER BOATMAN, CDC No. D-65055, on JULY 16, 2003, and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned tape(s) to the best of my ability.

I hereby certify that I am a disinterested party in the above-captioned matter and have no interest in the outcome of the hearing.

Dated August 2, 2003 at Sacramento County, California.

Debra M. Sevey
Transcriber
**CAPITOL ELECTRONIC REPORTING**